## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FRANK FUNARO, individually,**                    **C.A. No. _____**
10 Samantha Court
Sewell, NJ, 08080
**And**
**FRANK FUNARO, President of**
**Lexie, JA, Incorporated, and LEXIE, JA,**
**INCORPORATED, d/b/a, Fiso Lounge,**
1437-39 South Street
Philadelphia, PA, 19146
                    **Plaintiffs**

v.                                   **JURY TRIAL DEMANDED**

## CITY OF PHILADELPHIA
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
**and**
## POLICE SERGANT, JOHN MASSI
City of Philadelphia - 1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
**And**
## SERGANT WILLIAM LA TORRE
**Pennsylvania State Police**
**Bureau of Liquor Control Enforcement**
6901 Woodland Avenue
Philadelphia, PA 19142
**And**
## DEPUTY COMMISSIONER
## DOMINIC VERDI – Department of Licenses and Inspection
**City of Philadelphia**
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
**And**
## KENNETH GASSMAN- Department of
**Licenses and Inspection**
**City of Philadelphia**
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

1

## POLICE CAPTAIN TONY WASHINGTON

City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

### And

## POLICE COMMISSIONER
## CHARLES RAMSEY

City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

### And

## EVERETT GILLISON – DEPUTY MAYOR
## PUBLIC SAFETY

City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

### And

## FRANCES BURNS – COMMISSIONER

### City of Philadelphia
### Department of Licenses and Inspection

City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

### And

## ANN PASQUARIELLO,

**Divisional Deputy City Solicitor**
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

### And

## EDWARD JEFFERSON

**Deputy City Solicitor**
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

### And

## POLICE OFFICER WALTER WILLIAMS (BADGE 2636)

City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102

### And

## POLICE OFFICER ANTHONY GAMBLE (BADGE 4904)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## POLICE OFFICER CHRISTOPHER BALCO (BADGE 6343)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## POLICE OFFICER PATRICK MCKEE (BADGE # 8853)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## POLICE OFFICER JOSE COMBS (BADGE # 4082)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## POLICE OFFICER JAMES LIPPI (BADGE#1447)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## POLICE OFFICERTONY MILLINGTON (BADGE# 5229)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## RONALD GINNETTI (BADGE 2968)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## NATHANIEL HARPER (BADGE #6941)

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

### And

## FRANK HOLMES (BADGE #4579),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

And
## PAMELA CANADA (BADGE # 1985)
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And
## MICHAEL KUBIAK (BADGE # 2936),
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And
## CHRISTOPHER BAROLO (BADGE # 5052),
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And
## MICHAEL BRUNSON (BADGE #7204),
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And
## MICHAEL PERKINS (BADGE # 5348)
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And
## CHRISTOPHER RUBINO (BADGE # 5491)
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And
## LLOYD DURHAM (BADGE# 4964)
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And
## KURT MYERS (BADGE # 2925),
City of Philadelphia
1515 Arch Street — 14th Floor
Philadelphia, PA, 19102
And

## SHAWN DOBBINS (BADGE # 3187),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## JAMES MORAN (BADGE # 3067),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## ANDREA WILLAIMS (BADGE # 9847),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## MICAH CHICHEARO (BADGE # 1176),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## KONST APOSTOLOU (BADGE #7142),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## ANTHONY ANZIDEO (BADGE 4029),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## JOSE INNAMORATO (BADGE # 5145),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## ALEXA BRANCH (BADGE # 5226),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia. PA. 19102
And

## SYDEMY JOANIS (BADGE # 5358),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

**And**

## DAVID ANZIDEO (BADGE #1161),

City of Philadelphia
1515 Arch Street – 14th Floor
Philadelphia, PA, 19102

**And**

## MOUSA HASSAN (BADGE # 6600),

City of Philadelphia Law Department
1515 Arch Street
Philadelphia, Pa 19102

**And**

## CAPTAIN THOMAS BUTLER

Director of Operations
Bureau of Liquor Control Enforcement
Pennsylvania State Police
3655 Vartan Way
Harrisburg, PA, 17110

**And**

## JOHN OR JANE DOES 1 – 25 SEPTA POLICE OFFICERS

Southeastern Regional Transportation Authority
1234 Market Street
Philadelphia, PA 19107

**And**

## JOHN OR JANE DOES 25 - 50 SEPTA POLICE OFFICERS

Southeastern Regional Transportation Authority
1234 Market Street
Philadelphia, PA 19107

**And**

## JOHN OR JANE DOES 1 – 25 PHILADELPHIA HOUSING AUTHORITY POLICE OFFICERS

Philadelphia Housing Authority
12 So. 23rd Street
Philadelphia, PA 19103

**And**

## JOHN OR JANE DOES 25 - 50 PHILADELPHIA HOUSING AUTHORITY POLICE OFFICERS

Philadelphia Housing Authority
12 So. 23rd Street
Philadelphia, PA 19103

**And**

**JOHN OR JANE DOES 1 – 25 PENNSYLVANIASTATE POLICE OFFICERS**

Pennsylvania State Police

1800 Elmerton Ave.

Harrisburg, Pa 17110

**And**

**JOHN OR JANE DOES  25 – 50 PENNSYLVANIA  STATE  POLICE OFFICERS**

Pennsylvania State Police

1800 Elmerton Ave.

Harrisburg, Pa 17110

**And**

**JOHN OR JANE DOES 50 - 100 PENNSYLVANIA STATE  POLICE OFFICERS**

Pennsylvania State Police

1800 Elmerton Ave.

Harrisburg, Pa 17110

**And**

**JOHN OR JANE DOES  1 – 25 PHILADELPHIA POLICE OFFICERS**

City of Philadelphia

1515 Arch Street – 14th Floor

Philadelphia, PA, 19102

**And**

**JOHN OR JANE DOES  25 - 50 PHILADELPHIA POLICE OFFICERS**

City of Philadelphia

1515 Arch Street – 14th Floor

Philadelphia, PA, 19102

**And**

**JOHN OR JANE DOES  50 - 100 PHILADELPHIA POLICE OFFICERS**

City of Philadelphia

1515 Arch Street – 14th Floor

Philadelphia, PA, 19102

**And**

**POLICE OFFICER LEARY (BADGE # 3100 – P.R. # 235786)**

City of Philadelphia

1515 Arch Street – 14th Floor

Philadelphia, PA, 19102

**And**

**POLICE OFFICER BASIL (BADGE # 6723)**

City of Philadelphia

1515 Arch Street – 14th Floor

Philadelphia, PA, 19102

**And**

**TROOPER MCGRATH #9369**
Pennsylvania State Police
1800 Elmerton Ave.
Harrisburg, Pa 17110
**And**
**TROOPER GALL #9342**
Pennsylvania State Police
1800 Elmerton Ave.
Harrisburg, Pa 17110

## COMPLAINT (Civil Rights & Civil Rights Conspiracy)

## JURISDICTION

1. This is an action brought pursuant to 42 U.S.C. §§ 1983 & 1988. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 (1), (3), (4), and the aforementioned statutory provision. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 (a) to hear and adjudicate state law claims;

## PARTIES

2. Plaintiff, Frank Funaro, is an adult and a married father of four children. He is a resident of the State of New Jersey and resides at the above captioned address, and at all times material hereto is and/or was the President of Plaintiff, Lexie, J.A. Incorporated, d/b/a, Fiso Lounge, and the on-site manager of Fiso Lounge;

3. Plaintiff, Lexie, J.A. Incorporated, d/b/a, Fiso Lounge, is located at the above captioned address, and is a corporation duly incorporated under the laws of the Commonwealth of Pennsylvania;

4. Defendant, City of Philadelphia, is a municipality of the First Class, incorporated under the laws of the Commonwealth of Pennsylvania, and is located at the above

captioned address. At all times material hereto, the Defendant, City of Philadelphia acted under color of state law:

5. Defendant, Police Sergeant John Massi, at all times material hereto was a police sergeant in and for the City of Philadelphia assigned to the 17th Police District. At all times material hereto, Defendant Massi acted under color of state law and in his capacity as a police officer. He resides in the City of Philadelphia, and his address for service of process is as cited above. He is sued in both his individual and official capacities:

6. Defendant, State Police Sergeant William LaTorre, at all times material hereto was a police officer employed by the Pennsylvania State Police. As all times material hereto, Defendant William LaTorre acted under the color of state law and in his capacity as a state police sergeant. His current assignment and place of business is as cited above. He is sued in both his individual and official capacities:

7. Defendant, Dominic Verdi, at all times material hereto was employed as an official of the City of Philadelphia Department of Licenses and Inspection, and at times detailed to the City of Philadelphia Police Department, his official title is Deputy Commissioner of the City Department of Licenses and Inspection. At all times material hereto, Defendant Dominic Verdi acted under color of state law and in his capacity as an employee of the City of Philadelphia. He resides in the City of Philadelphia, and his address for service of process is as cited above. He is sued in both his individual and official capacities. **On or about February 17, 2011, Defendant Dominic Verdi, resigned his position with the City of Philadelphia after being implicated in a probe by the Federal Bureau of Investigation**

connected to criminal corruption in the City of Philadelphia Department of Licenses and Inspection:

8.  Defendant Tony Washington is a captain in and for the City of Philadelphia Police Department, assigned to the 17th Police District, and his business address is as captioned above. At all times material hereto, Defendant Tony Washington acted under color of state law and in his capacity as an employee of the City of Philadelphia. He is sued in is individual and official capacities;

9.  Defendant, Charles Ramsey, is the police commissioner in and for the City of Philadelphia, supervises all City of Philadelphia police personnel, including but not limited to the employees herein named as defendants, and is the final policy maker inside the Philadelphia Police Department. His business address is as captioned above. At all times material hereto, Defendant Charles Ramsey acted under color of state law and in his capacity as an employee of the City of Philadelphia. He is sued in his individual and official capacities;

10. Defendant, Everett Gillison, is the deputy mayor for public safety in and for the City of Philadelphia Police Department, supervises Defendant Charles Ramsey and all those under Defendant Charles Ramsey's command, is the final policy maker outside the Philadelphia Police Department in regard to Police Department Operations and policy, and is the final policy maker in regard to investigations conducted by the City's Office of Police Integrity and Accountability. His business address is as captioned above. At all times material hereto, Defendant Everett Gillison acted under color of state law and in his capacity as an employee of the City of Philadelphia. He is sued in is individual and official capacities;

11. Defendant, Andrew Kenneth Gassman, and at all times material hereto was employed as an official of the City of Philadelphia Department of Licenses and Inspection. At all times material hereto, Defendant Kenneth Gassman acted under color of state law and in his capacity as an employee of the City of Philadelphia. **Since the occurrence of the events averred in this complaint, Defendant Kenneth Gassman, was indicted by the United States Government, and has plead guilty to crimes involving the abuse of his public office and position.** He resides in the City of Philadelphia, and his address for service of process is as cited above. He is sued in both his individual and official capacities:

12. Defendant, Frances Burns was at all times material hereto the Commissioner and or Deputy Commissioner for the Department of Licenses and Inspection in and for the City of Philadelphia. In her capacity as Commissioner she is the final policy maker in the City of Philadelphia concerning the operations and training of the employees of her Department. Defendant Frances Burns supervised Defendants Dominic Verdi and Kenneth Gassman, and her business address is as captioned above. At all times material hereto, Defendant Frances Burns acted under color of state law and in her capacity as an employee of the City of Philadelphia. She is sued in her individual and official capacities:

13. Defendant, Ann Pasquariello, was at all times material hereto, the Divisional Deputy City Solicitor for Code Enforcement in and for the City of Philadelphia. Defendant Ann Pasquariello is the supervisor of Defendants Edward Jefferson, Kenneth Gassman, and Dominic Verdi. Her address is as captioned above. At all times material hereto, Defendant Ann Pasquariello acted under color of state law

and in her capacity as an employee of the City of Philadelphia. She is sued in her official and individual capacities;

14. Defendant, Edward Jefferson, was at all times material hereto, a Deputy City Solicitor for Code Enforcement in and for the City of Philadelphia. His address is as captioned above. At all times material hereto, Defendant Edward Jefferson acted under color of state law and in his capacity as an employee of the City of Philadelphia. Defendant Jefferson was the supervisor of Defendants Gassman and Verdi. He is sued in his official and individual capacities;

15. Defendants, Walter Williams; Anthony Gamble; Christopher Baleo, Patrick McKee; Jose Combs; James Lippi; Tony Millington; Ronald Ginnetti; Nathaniel Harper; Frank Holmes; Pamela Canada; Michael Kubiak; Christopher Barolo; Michael Bruson; Michael Perkins; Christopher Rubino; Lloyd Durham; Kurt Myers; Shawn Dobbins; James Moran; Andrea Williams; Micah Chichearo; Konst Apostolou; Anthony Anzideo; Jose Innamorato; Alex Branch; Sydemy Joanis; David Anzideo; and Mousa Hassan where at all times material hereto police officers in and for the City of Philadelphia contracted at the request of the Defendant, City of Philadelphia, by the Plaintiffs to provide security at the Plaintiffs' place of business, Fiso Lounge. Said Defendants were supervised by Defendants Massi and Washington. At all times material hereto these defendants acted under color of state law in their capacities as police officers in and for the City of Philadelphia. These defendants are sued in their individual and official capacities. Their business address is as captioned above;

16. Defendant Thomas Butler is a captain in the Pennsylvania State Police. At all times material hereto Defendant Butler acted under color of state law and in his capacity as an employee of the Commonwealth of Pennsylvania. Defendant Butler is the supervisor of Defendant William LaTorre, Trooper Gall and Trooper McGrath, and his address is as captioned above, he is sued in his individual and official capacities;

17. Defendants, John or Jane Does, 1 - 25 SEPTA Police Officers, where at all times material hereto acting under color of state law as employees of the Southeastern Pennsylvania Transportation Authority Police Department, and participated in the planning and execution of the May 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above;

18. Defendants, John or Jane Does, 25 - 50 SEPTA Police Officers, where at all times material hereto acting under color of state law as employees of the Southeastern Pennsylvania Transportation Authority Police Department, and participated in the planning and execution of the July 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above;

19. Defendants, John or Jane Does, 1 - 25 Philadelphia Housing Authority Police Officers, where at all times material hereto acting under color of state law as employees of the Philadelphia Housing Authority Police Department, and participated in the planning and execution of the May 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above;

20. Defendants, John or Jane Does, 25 - 50 Philadelphia Housing Authority Police Officers, where at all times material hereto acting under color of state law as employees of the Philadelphia Housing Authority Police Department, and participated in the planning and execution of the July 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above:

21. Defendants, John or Jane Does, 1-10 City of Philadelphia Police Officers, where at all times material hereto were acting under color of state law as employees of the City of Philadelphia Police Department, and participated in the May 3, 2009 incident in the parking lot east of Fiso Lounge. They are sued in their individual and official capacities:

22. Defendants, John or Jane Does, 10 - 35 City of Philadelphia Police Officers, where at all times material hereto acting under color of state law as employees of the City of Philadelphia Police Department, and participated in the planning and execution of the May 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above:

23. Defendants, John or Jane Does, 33- 55 City of Philadelphia Police Officers, where at all times material hereto acting under color of state law as employees of the City of Philadelphia Police Department, and participated in the planning and execution of the July 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above:

24. Defendants, John or Jane Does, 55 - 105 City of Philadelphia Police Officers, where at all times material hereto acting under color of state law as employees of the City of Philadelphia Police Department, and participated in the planning and execution of the December 2010 surveillance and illegal inspection of Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above:

25. Defendants, John or Jane Does, 1 - 25 Pennsylvania State Police Officers, where at all times material hereto acting under color of state law as employees of the Pennsylvania State Police, and participated in the planning and execution of the May 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above:

26. Defendants, John or Jane Does, 25 - 50 Pennsylvania State Police Officers, where at all times material hereto acting under color of state law as employees of the Pennsylvania State Police, and participated in the planning and execution of the July 2009 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above:

27. Defendants, John or Jane Does, 50 - 100 Pennsylvania State Police Officers, where at all times material hereto acting under color of state law as employees of the Pennsylvania State Police, and participated in the planning and execution of the December 2010 surveillance and raid on Plaintiffs' place of business. They are sued in both their individual and official capacities. Their address is as captioned above:

28. Defendant, Trooper McGrath #9369, was at all times material hereto acting under color of state law as an employee of the Pennsylvania State Police, and participated

in the December 2010 raid on the premises of the Plaintiffs. He is sued in both his individual and official capacities;

29. Defendant, Trooper Gall #9342, was at all times material hereto acting under color of state law as an employee of the Pennsylvania State Police, and participated in the December 2010 raid on the premises of the Plaintiffs. He is sued in both his individual and official capacities;

30. Defendant, Police Officer Leary, was at all times material hereto, acting under color of state law as police officer in and for the City of Philadelphia, in the 17th Police District, whose address is cited above. He is sued in both his individual and official capacities;

31. Defendant, Police Officer Basil, was at all times material hereto, acting under color of state law as police officer in and for the City of Philadelphia, in the 17th Police District, whose address is cited above. He is sued in both his individual and official capacities;

## BACKGROUND FACTS

32. Since at least 1996 the City of Philadelphia has received numerous complaints about the operations of the Department of Licenses and Inspections, including but not limited to, now former Deputy Commissioner Dominic Verdi and Kenneth Gassman;

33. In a particular incident in 1996, Mr. Verdi expressed what the Plaintiffs believe and aver is still currently to position of all employees of the City of Philadelphia involved in this case, namely that the Philadelphia Code stretches so far that it "[permits them] to enter citizen's homes to inspect whenever [they] desire", and

that their authority in a regulated business stretches even further to allow them the arbitrary authority to shut a business down on a whim, and completely disregard Constitutional requirements;

34. At or near the year 2000 it was reported that Federal Judge James McGirr Kelly noted that the City in relation to the Department of Licenses and Inspection was "[u]ndanted by the Constitution or Supreme Court precedent..."

35. On or about the year 2000 the City of Philadelphia paid a $350,000.00 settlement in the case of Maffucci et., al. v. City of Philadelphia, et.al., U.S.D.C. Ed. Pa. C.A. No. 98-CV-2718, and as result was on official legal notice that there was woefully inadequate training for City employees on the limitations that the Constitution of the United States placed on "administrative inspections";

36. Despite being placed on such notice the City failed to correct this problem or institute adequate training or regulations;

37. Prior to January of 2008, Defendant, Dominic Verdi has been the subject of numerous complaints to the City of Philadelphia, concerning his violations of the Constitution of the United States and other unlawful and unreasonable behavior. It is averred and believed that the City of Philadelphia failed to take decisive action because of Mr. Verdi's rumored ties to former State Senator Vincent Fumo and or other politicians connected to South Philadelphia;

38. On or about the year of 2007 various City agencies were still not adhering to the limits placed on their activates by the United States Constitution and the case of Gillespie, et.,al., v. City of Philadelphia, et.al. U.S.D.C.Ed.Pa., Civil Action 09-4810 was filed. Said lawsuit involved a series of unconstitutional actions taken by

the Defendant City of Philadelphia and various City employees including, but limited to Defendant, Kenneth Gassman;

39. In February of 2011 the City settled the matter of Gillespie, et.,al., v. City of Philadelphia, et.,al. U.S.D.C.Ed.Pa., Civil Action 09-4810 with a stipulated "confidentiality agreement" to hide the facts and circumstances of this matter, and/or the amount of the settlement from the tax payers of the City of Philadelphia;

40. Defendant, Commissioner Frances Burns, served as a deputy commissioner of the City's Department of Licenses and Inspection prior to her appointment as Commissioner and was aware of all of the facts and circumstances in the proceeding paragraphs, but did nothing to properly training her employees and or reign in Mr. Verdi or Mr. Gassman;

41. Defendants Charles Ramsey and Everett Gillison were fully briefed by Mayor Michael Nutter's Transition Team upon assuming their roles in the Administration and where therefore fully aware of all significant aspects of the operations of the Philadelphia Police Department;

42. Defendants Charles Ramsey and Everett Gillison where therefore specially aware of the complaints and the unlawful and unconstitutional actions of Dominic Verdi and in his role as a deputy commissioner of the Department of Licenses and Inspection "detailed" to the Philadelphia Police Department, but did nothing to intervene and stop his actions until February of 2010;

**PARTICULAR FACTS**

43. Fiso Lounge is located in the 1400 block of South Street in the City and County of Philadelphia;

44. Fiso Lounge has been operating at this location for about 7 years;

45. At some point in 2008 Fiso Lounge, as part of what was then a very close working relationship with the Philadelphia Police Department, and at the suggestion of the City of Philadelphia, hired a police detail to work security outside, at or near the premises;

46. The contract between the City of Philadelphia and the Plaintiffs provided that police officers working this detail were under the supervision and control of the Plaintiffs, and where to be paid on over time by the Plaintiffs;

47. After a good start the Defendants City of Philadelphia, Walter Williams; Anthony Gamble; Christopher Balco, Patrick McKee; Jose Combs; James Lippi; Tony Millington; Ronald Ginnetti; Nathaniel Harper; Frank Holmes; Pamela Canada; Michael Kubiak; Christopher Barolo; Michael Bruson; Michael Perkins; Christopher Rubino; Lloyd Durham; Kurt Myers; Shawn Dobbins; James Moran; Andrea Williams; Micah Chichearo; Konst Apostolou; Anthony Anzideo; Jose Innamorato; Alex Branch; Sydemy Joanis; David Anzideo; and Mousa Hassan began to violate the terms of their contract with Fiso Lounge, refused to provide services as directed, informed Fiso staff that the business was to be shut down, and advised staff to look for new jobs, all at the direction of Defendant, Sergeant Massi;

48. At or near the time of these events, the Plaintiffs exercised their Constitutional rights to complain of the actions of the Defendant Sergeant Massi, to his superior, Defendant Police Captain Craig Tony Washington, and to Council President Anna Verna's office. No action was taken;

49. On or about May 3, 2009, an incident occurred in a privately owned parking lot, east of Fiso Lounge, approximately 1/2 hour after Fiso closed for business, wherein two private citizens engaged in what was reported to be an argument were arrested by members of the Philadelphia Police Department assigned to the 17th Police District. During the course of said arrest it was reported that one or both of the police officers involved were allegedly physically injured by said arrestees;

50. Defendants, John or Jane Does, 1-10 City of Philadelphia Police Officers, were present during the course of these events and one of their number, who held the rank of police lieutenant, in retaliation for said events, and in retaliation for Plaintiffs exercising their Constitutional rights to complain to City officials of prior misconduct on the part of Sergeant Massi and the Defendants named herein, indicated that the City's Department of Licenses and Inspection was going to be called and that Fiso Lounge would be shut down;

51. The City of Philadelphia Nuisance Task Force, aka, the Public Nuisance Task Force (hereinafter the Task Force) is an "association" of law enforcement and regulatory officials made up of, organized by, and/or directed and or controlled by the City of Philadelphia acting through the Department of Licenses and Inspection, the City of Philadelphia Police Department, and the City of Philadelphia Law Department;

52. On or about Friday, May 10, 2009, in furtherance of the conspiracy of Defendants, Walter Williams; Anthony Gamble; Christopher Balco, Patrick McKee; Jose Combs; James Lippi; Tony Millington; Ronald Ginnetti; Nathaniel Harper; Frank Holmes; Pamela Canada; Michael Kubiak; Christopher Barolo; Michael Bruson; Michael Perkins; Christopher Rubino; Lloyd Durham; Kurt Myers; Shawn Dobbins;

James Moran; Andrea Williams; Micah Chichearo; Konst Apostolou; Anthony Anzideo; Jose Innamorato; Alex Branch; Sydemy Joanis; David Anzideo; Mousa Hassan. John or Jane Does, 1 - 25 SEPTA Police Officers, John or Jane Does, 1 - 25 Philadelphia Housing Authority Police Officers, John or Jane Does, 1- 35 City of Philadelphia Police Officers, John or Jane Does, 1 - 25 Pennsylvania State Police Officers, William LaTorre, Kenneth Gassman, Dominic Verdi, Tony Washington, Ann Pasquariello, and Edward Jefferson, said conspiracy being facilitated and directed by Sergeant John Massi to deprive Plaintiffs' of their Constitutional rights, and in retaliation for the events of May 3, 2009, in retaliation for the Plaintiffs exercise their First Amendment rights to complain to Captain Tony Washington, and the Office of Council President Anna Verna, said defendants caused to be present and/or were present when a force consisting of numerous heavily armed police officers and other officials, conducted an unauthorized, illegal, and warrantless seizure of Fiso Lounge under the pretext of conducting and administrative inspection, but in reality furthering the conspiracy to be present at Fiso Lounge with a large, overwhelming, unreasonable, and unlawful show of force to scare customers away, and intimidate the Plaintiffs, with the objective of ruining the business of the Plaintiffs' and thereby shutting Fiso Lounge down;

53. All members of the public are not entitled to enter Fiso Lounge. To the contrary, any business invitee (or member of the public) wanting to enter Fiso Lounge must: 1) submit identification to establish they are of legal drinking age; 2) be subjected to a pat-down search for weapons and/or have their purses searched; 3) be subjected to a metal detecting wand; 5) not be armed with a firearm or other weapon and 6)

pay an entrance fee. The Defendants descended on Fiso Lounge did not submit to any of these requirements, they merely forced their way into the building;

54. No exigent circumstances existed to justify a warrantless search of the premises;, and no legal or reasonable grounds existed to justify the overwhelming show of force by law enforcement;

55. The Defendants above named, upon entering Fiso Lounge yelled at customers to get out, used loud profanity to get the crowd to become confused and scared, banged their nightsticks on tables, turned the lights up on the dance floor, stopped the music, and otherwise terrified and scared customers of the premises causing them to leave the building well before any inspection had finished;

56. This unlawful seizure of Fiso Lounge resulted in it being ordered to close that night because the involved Defendants reported that a portion of romex in the basement was not covered according to commercial code standards and falsely claimed that said condition constituted an immediate threat to the health and safety of the patrons of Fiso Lounge. Said officials falsely claimed that the fire alarm was defective. As a result, paying customers were forced to leave the premises, and Fiso Lounge remained closed the next day (Saturday night);

57. The financial records kept in the regular course of business of Fiso Lounge demonstrated that from the day of this first unlawful seizure of Fiso Lounge, its sales, attendance and revenues dropped 60 % as a direct and proximate result of the illegal conduct complained of, due to this event and the further incidents cited in this Complaint. Fiso Lounge has not recovered to its pre-May 2009 income and revenue levels. The Plaintiffs have not recovered;

58. On or about Monday, May 12, 2009, Fiso Lounge was allowed to re-open after Plaintiffs covered the romex wiring complained of, and were able to demonstrate to officials of the City of Philadelphia that there was in fact nothing wrong with the Fire Alarm;

59. On May 16, 2009, late in the evening, a patron who was asked to leave Fiso Lounge by Fiso security after he became unruly. Said patron initially left the premises but at a later point tried to reenter, was rebuffed, and proceed to end up across the street causing a scene. Pursuant to instructions and direction given by City officials concerning his legal responsibility for the actions of his patrons at or near Fiso Lounge, Plaintiff, Frank Funaro, exited Fiso Lounge to assist his security in clearing the area and the police were called;

60. On or about May 17, 2009, in the early morning hours, after the incident referred to above, the defendant Police Sergeant John Massi, then assigned to the 17th District 5 Squad, appeared on the premises of Fiso Lounge and in front of witnesses announced that he was going to shut Fiso Lounge down, that the assembled employees had better therefore start looking for alterative employment, and that if any of his officers were hurt again he would personally travel to New Jersey and arrest Plaintiff Frank Funaro;

61. On or about May 17, 2009, Sergeant Massi contacted the City's Department of Licenses and Inspection and unlawfully directed that Fiso Lounge be shut down;

62. At or near the same time of these events, Defendants, Sergeant John Massi, Edward Jefferson, Dominic Verdi, Andrew Kenneth Gassman, Captain Tony Washington, William LaTorre, and Ann Pasquariello, widened the conspiracy to deprive the

Plaintiffs of their Constitutional rights by planning, conducting, and engaging in a pre-textual investigation and or gathering of false evidence to justify a cease operations order being issued by the City of Philadelphia, Department of Licenses and Inspection;

63. Said defendants mislead and deceived private citizens into submitting false complaints to various governmental entities, at the direction of Sergeant John Massi and/or other named defendants, to build the false case against Fiso Lounge and in support of the desired Cease Operations Order;

64. Fiso Lounge was thereafter served with a Cease Operations Order and the premises was closed down per the order of the City of Philadelphia Department of Licenses and Inspection effective May 21, 2009;

65. The Plaintiffs appealed this order to the City of Philadelphia, Licenses and Inspection Review Board (hereinafter "the Board");

66. On June 2, 2009, a hearing was held before the Board to hear the merits of the closure of the Plaintiffs' place of business. At said hearing Defendant, Sergeant Massi, repeatedly lied under oath;

67. Despite the fact that Defendant Edward Jefferson represented to the Board that he had "20 witnesses" to support the City's case, no civilian witnesses presented live testimony at said hearing, but the 3 false statements of private citizens were presented by the City of Philadelphia and Defendant Edward Jefferson (See Exhibit A – Transcript of Hearing Before the Board, Page 11, Lines 5 -7- Notes of Undersigned Counsel Redacted);

24

68. The Board did not credit any of the false and or intentionally misleading evidence, sustained the Plaintiffs' appeal of the Cease Operations Order, ruled that Fiso Lounge was not a public nuisance, and allowed Fiso Lounge to open immediately (See Exhibit B – Transcript of Hearing Before the Board, Page 144);

69. The City of Philadelphia did not appeal this ruling and it is therefore final and biding;

70. On or about June 6, 2009 Fiso Lounge re-opened and Defendant Massi arrived at the premises, again demanded another illegal inspection of the premises, and threatened the Plaintiffs with again an illegal shutdown of their business;

71. On or about July 11, 2009, not being satisfied with the ruling of the Licenses and Inspection Review Board, and in retaliation of the Plaintiffs' exercise of the their Due Process rights in appealing the City's closure order to the Board, and or for exercising their First Amendments rights outlined above, and in retaliation of the May 3, 2009 incident in the parking lot east of Fiso Lounge, Defendant, Sergeant John Massi, and defendants Tony Washington, Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello, William LaTorre, John or Jane Does, 25 - 50 SEPTA Police Officers, John or Jane Does, 25 - 50 Philadelphia Housing Authority Police Officers, John or Jane Does, 33- 55 City of Philadelphia Police Officers, and John or Jane Does, 25 - 50 Pennsylvania State Police Officers, extended the conspiracy to deprive the Plaintiffs of their Constitutional rights, and again caused, and/or participated in another unlawful seizure of the premises;

72. Said Defendants, most of whom were heavily armed descended on Fiso Lounge at the height of business on what was Saturday night;

73. Upon entering Fiso Lounge Defendant Kenneth Gassman and John or Jane Does, 25
- 50 SEPTA Police Officers, John or Jane Does, 25 - 50 Philadelphia Housing
Authority Police Officers, John or Jane Does, 33- 55 City of Philadelphia Police
Officers, and John or Jane Does, 25 - 50 Pennsylvania State Police Officers, began
to yell at customers to get out, used loud profanity to get the crowd to become
confused and scared, banged their nightsticks on tables turned the lights up on the
dance floor, stopped the music, sprayed tear gas, pepper spray or other chemical
repellant throughout the premises, and otherwise terrified and scarred customers of
the premises causing them to leave the building well before any inspection had
finished;

74. Defendants John or Jane Does, 25 - 50 SEPTA Police Officers, and/or John or Jane
Does, 25 - 50 Philadelphia Housing Authority Police Officers, and/or John or Jane
Does, 33- 55 City of Philadelphia Police Officers, and or John or Jane Does, 25 - 50
Pennsylvania State Police Officers, physically assaulted the disc jockey, broke the
equipment of the disc jockey, and sprayed pepper spray, tear gas, and or other
chemical repellant throughout the premises;

75. John or Jane Does, 25 - 50 SEPTA Police Officers, and or, John or Jane Does, 25 -
50 Philadelphia Housing Authority Police Officers, and or John or Jane Does, 33-
55 City of Philadelphia Police Officers, and or John or Jane Does, 25 - 50
Pennsylvania State Police Officers, asked one particular customer for identification
and when it did not come fast enough he was unlawfully wrestled to the floor,
otherwise assaulted, and after being restrained was sprayed with pepper spray in his
facial area. He was unlawfully arrested for assault on police. A crime for which he

was later found not guilty when it became clear that the arresting officer committed perjury both in his police paperwork and on the stand in Court (See, Commonwealth v. Kemal Moise, MC51-CR-0031775-2009). This false arrest is being investigated by the City of Philadelphia Police Department, Internal Affairs Division;

76. The City of Philadelphia settled the pre-suit claim of Kemal Moise in February of 2011;

77. Another customer called 911 to report the abuse he was witnessing by law enforcement officials, and thereafter was filming with his cell phone this unlawful and excessive use of force on the customer cited above;

78. While the filming was going on, Defendant Kenneth Gassman, and one of the Defendant John Doe defendants approached this customer, illegally confiscated his cell phone and erased the footage of police abuse;

79. One customer appeared to have an asthma attack as a result of the actions of the Task Force and or Defendant Kenneth Gassman and John or Jane Does, 25 - 50 SEPTA Police Officers, John or Jane Does, 25 - 50 Philadelphia Housing Authority Police Officers, John or Jane Does, 33- 55 City of Philadelphia Police Officers, and John or Jane Does, 25 - 50 Pennsylvania State Police Officers;

80. The vast majority of customers fled the building as a result of the actions of the Task Force;

81. Many of the actions of the Task Force were recorded by cameras installed throughout Fiso Lounge for security. Said recordings where later downloaded onto a cd-rom and preserved by the Plaintiffs;

82. After having scared 95% of the Plaintiffs' customers away in this fashion, an official of the Task Force sarcastically said to Plaintiff, Frank Funaro, "you can re-open now";

83. The illegal seizure of the premises was a pretext for an unlawful and unnecessary show of force to scare customers away from the business, from thereafter returning, in furtherance of Sergeant Massi' stated threat to shut the business down and deprive the Plaintiffs' of the rights under the Constitution of the United States;

84. At or near the time these events were occurring, Plaintiff Frank Funaro, contacted another tavern owner to inquire as to whether this owner would be willing to join in a lawsuit to stop the illegal behavior of the agents of the City of Philadelphia, including but not limited to, the City of Philadelphia Department of Licenses and Inspection;

85. This Tavern owner related that he had had the same problem with the Task Force and the Department of Licenses and Inspection and that he was able to stop the inspections and/or raids by buying beer from a beer distributorship owned in whole or in part by Defendant, Dominic Verdi, and/or his wife. This Tavern Owner related that all the Plaintiffs had to do was call one Greg Quigley and explain to him the situation and make arrangements to buy the beer as outlined. Mr. Quigley would then talk to Defendant Dominic Verdi, and the inspections and/or raids would cease. The Plaintiffs decided this was not the correct path and thereafter retained the undersigned counsel;

86. In October of 2009, well after the events outlined above, Plaintiff applied for and received without incident renewals of all the relevant licenses to continue to operate

Fiso Lounge, including but not limited to the Liquor License for the premises which is issued by the Commonwealth of Pennsylvania Liquor Control Board;

87. Subsequent to the May 2009 illegal raid by the Defendants cited herein. Plaintiffs applied for a Special Assembly License from the Department of Licenses in Inspections. all approvals were granted, except for the required approval from the City of Philadelphia Police Department. Thus on or about October 19, 2009, said request for renewal was denied;

88. The denial of said license was the unlawful decision of the Defendant, Captain Craig Tony Washington, in furtherance of the conspiracy between said Defendant. and Defendants, Sergeant John Massi, Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello, and William LaTorre to deny the Plaintiffs their Constitutional rights, relying the same knowingly false information used to support the Cease Operations Order that had been discredited by, and the related issues already adjudicated in favor of the Plaintiffs, by the Board. This action was also taken in retaliation for Plaintiffs exercising their First Amendment rights to complain to Captain Tony Washington, and the Office of Council President Anna Verna, about the unlawful conduct of Sergeant Massi, and in retaliation for the exercise of their right to Due Process in the form of the Appeal to the Board;

89. On or about November 2, 2009, the Plaintiffs, through undersigned Counsel, reported these incidents to the City of Philadelphia via correspondence to the following City officials:1) Mayor Michael Nutter: 2) Deputy Mayor for Public Safety Everett Gillison: 3) Amy Kurland, Inspector General, City of Philadelphia: 4) Police Commissioner Charles Ramsey: 5) Frances Burns, Commissioner.

Department of Licenses and Inspection. City of Philadelphia; 6) Curtis Douglas, Chief Accountability and Integrity Officer, Office of the Deputy Mayor for Public Safety; 7) Robert Nix, Jr., Chairman, City of Philadelphia, Police Advisory Commission; 8) Mr. Richard Glazer, Chairman, City of Philadelphia, Board of Ethics; 9) Mr. Craig Straw, Chief Deputy City Solicitor; 10) Clarence Armbrister, Chief of Staff, Office of the Mayor; 11) Camille Barnett, Managing Director, City of Philadelphia; 12) Bridget Greenwald, Deputy Commissioner, Licenses and Inspection, City of Philadelphia; 13) Pat Giorgio-Fox, Deputy Commissioner, Police Department; 14) Richard , Deputy Commissioner, Police Department; 15) Kevin Bethel, Deputy Commissioner, Police Department; 16) Elizabeth Mattioni Esq., Litigation Chair, Law Department; 17) J. Shane Creamer, Jr., Esq., Executive Director, City of Philadelphia, Board of Ethics; 18) William W. Johnson, Executive Director, Police Advisory Commission; 19) Folasade Olanipekun Lewis, Esq., Deputy Commerce Director; 20) Christopher Difusco, Esq., City of Philadelphia Law Department; and 21) Michael Dwyer, Lieutenant, Philadelphia Police Department (See Exhibit C - Plaintiffs' Correspondence to City of November 2, 2009);

90. This correspondence was also served on Defendants, Tony Washington, John Massi, and Dominic Verdi, via U.S. Mail and facsimile on said date (See Exhibit C);

91. The Plaintiffs requested that the City cease all operations of the Task Force since their operations were clearly un-constitutional, requested an investigation of the events outlined in this Complaint, the transfer from the 17th District of Sergeant

Massi. and protection for the Plaintiffs from any retaliation for reporting these events:

92. On November 5, 2009, in direct retaliation for the exercise of the Plaintiffs' Constitutional Rights of free speech and to petition the government for redress of grievances as evidenced by the Plaintiffs' November 2, 2009 correspondence, and in further retaliation for the May 3, 2009 raid in the parking lot east of Fiso Lounge, and the previously outlined exercise of Constitutional rights by the Plaintiffs', Sergeant John Massi, Captain Craig Tony Washington, extended the already well in progress conspiracy, and engaged in and or caused unlawful intimidation to occur by agents of the City of Philadelphia. Specifically, on said dates, despite there being no police activity since the July 2009 raid on Fiso Lounge, suddenly there was a heavy presence of police in the 1400 block of South Street engaging in specific activities to intimidate and threaten the Plaintiffs, the staff of Fiso Lounge, and customers:

93. After a telephone call and correspondence by the undersigned Counsel to the City of Philadelphia Law Department, this activity ceased (See Exhibit D - Plaintiffs' Correspondence to City of November 13, 2009):

94. Upon information and belief, at or near this time Sergeant John Massi was either transferred form the 17th Police District, and or relieved of his special duties as a member of the 5 Squad of the 17th Police District:

95. Between the illegal July 11, 2009 raid of the Task Force and December 2, 2010, a period of 1 year and 4 months, there were no problematic incidents involving the City of Philadelphia, any of its Departments, or patrons or employees of Fiso

Lounge, aside from the retaliatory conduct of November 5, 2009. There was peace in the valley;

96. Despite having knowledge of the illegal and conspiratorial conduct complained of in Plaintiffs' November 2, 2009 correspondence that this illegal conduct was widespread, and being on notice that the relevant City statutes were unconstitutional, Defendants, City of Philadelphia, Everett Gillison, Charles Ramsey, Edward Jefferson, Ann Pasquariello, and Frances Burns did nothing to investigate said complaint and/or to halt the behavior complained of between the service of Plaintiffs' letter of November 2, 2009 and February 3, 2010. A period of 3 months;

97. In direct retaliation for the exercise of the Plaintiffs' Constitutional Rights of free speech and to petition the government for redress of grievances as evidenced by the Plaintiffs' November 2, 2009 correspondence, and in further retaliation for the May 3, 2009 raid in the parking lot east of Fiso Lounge, and the previously outlined exercise of Constitutional rights by the Plaintiffs', Sergeant John Massi, Captain Craig Tony Washington, extended the already well in progress conspiracy, and engaged in and or caused unlawful intimidation to occur by agents of the City of Philadelphia. Specifically, while completely disregarding the Plaintiffs' request for an investigation into the events complained of in the instant action, on January 26, 2010, the City did institute a breach of contract action in the Philadelphia Court of Common Pleas against the Plaintiffs'. Said suit concerned the City's allegation that the Plaintiffs' failed to fully pay for the contracted services of the police detail outlined in the various Paragraphs of this Complaint, and whose actions where

complained off in Plaintiffs' November 2, 2009 request for investigation to the City. (*See*, City of Philadelphia, v. Funaro, Court of Common Pleas of Philadelphia County, January Term, 2010, No. 002921):

98. The City's breach of contract action was withdrawn by the City of Philadelphia Law Department at the request of undersigned counsel;

99. On February 3, 2009, further correspondence was served by the Plaintiffs on the following City officials: 1) Chief Deputy City Solicitor Craig Straw; 2) Camille Barnett, Managing Director; 3) Amy Kurland, Inspector General; 4) Everett Gillison, Deputy Mayor for Public Safety; 5) Frances Burns, Commissioner of the Department of Licenses and Inspection; 6) Charles Ramsey, Police Commissioner, and 7) Elizabeth Mattioni, Law Department, Litigation Chair ( See Exhibit E - Plaintiffs' Correspondence to City of February 3, 2010);

100. Said correspondence was also faxed and otherwise communicated to Defendants Dominic Verdi, Tony Washington, and John Massi, (See Exhibit E);

101. Plaintiffs' February 3, 2010 correspondence complained of the lack of any action or investigation being undertaken by the City as a result of Plaintiffs' November 2, 2009 correspondence, and detailed further facts to support Plaintiffs' initial complaint and request for investigation;

102. Despite having knowledge of the illegal and conspiratorial conduct complained of in Plaintiffs' November 2, 2009, that this illegal conduct was widespread, and being on notice that the relevant City statutes were unconstitutional, and despite Plaintiffs' follow-up correspondence of February 3, 2010, Defendants, City of Philadelphia, Everett Gillison, Charles Ramsey, Edward Jefferson, Ann

Pasqueriello, and Frances Burns, and/or Tony Washington did nothing to investigate said complaint and/or to halt the behavior complained of between the service of Plaintiffs' letter on November 2, 2009, the supplemental correspondence of February 3, 2010, and October 7, 2010. Now a period of some 11 months;

103. On or about July 17, 2010 Plaintiffs served on the City of Philadelphia a demand letter for some $400,000.00 in what was then a reasonable compromise demand for the damages suffered by the Plaintiff. Said correspondence outlined the specific United States Supreme Court precedent that rendered the City's administrative inspection statutes unconstitutional on their face, and/or that provided clear indicated that the unreasonable methods of the Defendants were unconstitutional. At the direction of the City of Philadelphia Law Department this correspondence was only served on: 1) Chief Deputy City Solicitor Craig Straw,; 2) Law Department Litigation Chair 'Elizabeth Mattioni; 3) and Defendant Edward Jefferson (See Exhibit F Plaintiffs' Correspondence to City of July 17, 2010);

104. This correspondence was distributed widely and read by many of the named defendants, including but limited to Defendants Edward Jefferson and Ann Pasquariello;

105. The City still did nothing to correct its practices, nor did the City indicate in writing any legal grounds to question the legal authority cited in Plaintiffs' letter;

106. On or about October 7, 2010, the undersigned Counsel again complained to City officials concerning the actions of Defendant Dominic Verdi, as they related to another client. Said correspondence was served on the following City officials: 1) Frances Burns, Commissioner, Department of Licenses and Inspection; 2) Charles

Ramsey, Police Commissioner; 3) Craig Straw, Chief Deputy City Solicitor; 4) Police Captain Dennis Wilson, 9th Police District; and 5) Chief Deputy City Solicitor Andrew S. Ross (See Exhibit G — Counsel's October 7, 2010 Correspondence to City);

107. Said correspondence was also served on Defendants, John Massi, Dominic Verdi, Edward Jefferson, and Tony Washington (See Exhibit G);

108. Counsel's correspondence of October 7, 2010 was sharply critical of the City's lack of response to the November 2, 2009, and February, 3, 2010 complaints regarding Fiso Lounge, the City of Philadelphia Law Department, Defendants Ann Pasquariello, and Edward Jefferson, and most critically and directly Defendant Dominic Verdi and his actions as they related to both Fiso Lounge, and Counsel's new client;

109. On or about October 15, 2010 Plaintiffs applied to the Commonwealth of Pennsylvania Liquor Control Board ("PLCB") for the annual renewal of their liquor license;

110. In all prior years (including 2009 the year of the two illegal raids on Fiso) this license was routinely extended;

111. Plaintiffs made the application to the PLCB knowing that on June 2, 2009, the Board had ruled in favor of Plaintiffs and determined that the incidents the City falsely attributed to Plaintiffs, that occurred prior to June of 2009, did not constitute a public nuisance and where not caused by and or attributable to the Plaintiffs;

112. At the time of the Plaintiffs application to the PLCB there had been no police and/or other activity that was arguably illegal or problematic since the June 2, 2009

ruling of the Board. and or the July 2009 raid cited in the proceeding paragraphs of this Complaint, a period of approximately 1 year and 5 months :

113. In fact there had been no such "problematic" activity at all since the October 2009. renewal of the Plaintiffs' Liquor License:

114. As result of the continuing conspiracy between defendants, Tony Washington, Sergeant John Massi. Tony Washington. Dominic Verdi. Kenneth Gassman. Edward Jefferson. Ann Pasquariello. and William LaTorre. in retaliation for the Plaintiffs' exercise of their Constitutional rights in bringing the issues averred in this complaint to City officials. and/or for the exercise of the Plaintiffs' of their due Process rights before the Board. and/or the May 3. 2009 incident in the parking lot East of Fiso Lounge. said defendants communicated. or caused to be communicated knowingly false information to the Pennsylvania Liquor Control Board:

115. As a result. Plaintiffs received correspondence dated October 29. 2010 granting a temporary 30 day renewal of Plaintiffs' Liquor License from the Pennsylvania Liquor Control Board. The letter stated that: "*the decision to renew your license does not diminish the serious nature of the allegations of fights, assaults, assault of a police officer and disorderly operations reported by the Philadelphia Police Department during the time period November 2008. to present*":

116. Undersigned Counsel immediately verbally notified Craig Straw: Chief Deputy City Solicitor of this event, shortly thereafter faxed him a copy of the correspondence from the Liquor Control Board. and requested that he look into the matter. He agreed to do so and immediately thereafter began to make inquires of the relevant City officials and/or Defendants. Tony Washington, Sergeant John

Massi, Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello, and William LaTorre (See Exhibit H – Fax Cover Sheet to Craig Straw and October 29, 2010 Correspondence from the Pennsylvania Liquor Control Board);

117. At or near the time of Plaintiffs' application to the PLCB and/or after the receipt of the PLCB's October 29, 2010 letter, as the result of the continuing conspiracy to violate the Constitutional rights of the Plaintiffs, Defendants Tony Washington, John Massi, William LaTorre, Dominic Verdi, Kenneth Gassman, Edward Jefferson, and or Ann Pasquariello, caused undercover agents, believed to be employed either by the Pennsylvania State Police or the Pennsylvania Liquor Control Board, to begin surveillance of the Plaintiffs place of business;

118. On or about November 27, 2010, as the result of the continuing conspiracy to violate the Constitutional rights of the Plaintiffs, and in retaliation for the Plaintiffs' exercise of their Constitutional rights in bringing the issues averred in this complaint to the attention of City officials, and or for the exercise by the Plaintiffs' of their Due Process rights before the Board, and or the May 3, 2009 incident in the parking lot East of Fiso Lounge., Defendants, Tony Washington, John Massi, William LaTorre, Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello, and or John or Jane Does, 55 - 105 City of Philadelphia Police Officers, caused and or participated in another illegal inspection of Plaintiffs' place of business. No violations of any law or related regulations were found;

119. On November 29, 2010, undersigned Counsel verbally informed Chief Deputy Solicitor Craig Straw of this illegal inspection, requested that he look into the matter, and that the abuses be stopped.

120. Immediately thereafter, Mr. Straw began to make inquires within the City of Philadelphia Police Department (including but not limited to the 17th Police District wherein Defendant Washington is the commanding officer), the Department of Licenses and Inspection, the City's Law Department, and/or other agencies or individuals he deemed appropriate;

121. On December 2, 2010 the Plaintiffs, as a result of an agreement with student athletes of the University of Delaware who were celebrating the end of the school year, were hosting a private party at Fiso Lounge;

122. The students who attended this party were both over and under 21 years of age. Those being under the legal drinking age were clearly identified as such, and specific instructions had be given, and agreed to, by the organizers of this event by Plaintiffs concerning the importance of no underage patron trying to illegally purchase alcohol. Both groups were physically separated and very closely watched by numerous security staff employed by the Plaintiffs, were also under video surveillance and monitoring, and indentifying armbands were utilized, all of which is customary and reasonable procedure in the tavern industry;

123. On December 2, 2010 as the result of the continuing conspiracy to violate the Constitutional rights of the Plaintiffs, and in retaliation for the Plaintiffs' exercise of their Constitutional rights in bringing the issues averred in this complaint to the attention of City officials, and/or for the exercise by the Plaintiffs' of their Due Process rights before the Board, and/or the May 3, 2009 incident in the parking lot East of Fiso Lounge, Tony Washington, John Massi, William LaTorre, Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello, Trooper Gall, and

Trooper McGrath, and or John or Jane Does, 50 - 100 Pennsylvania State Police Officers, caused, directed, and/or participated in another illegal inspection of Plaintiffs' place of business:

124. Defendants William LaTorre, Trooper Gall, Trooper McGrath and John or Jane Does, 50 - 100 Pennsylvania State Police Officers, were inside and outside Fiso Lounge observing operations for a noticeable period of time prior to taking any disruptive and or illegal state action. The unreasonable and/or illegal conduct engaged on December 2, 2010 by Defendant La Torre, Trooper Gall, Trooper McGrath and John or Jane Does, 50 - 100 Pennsylvania State Police Officers, consisted of, but was not limited to: 1) displaying and engaging in an overwhelming, excessive, and unlawful show of force to deter future patronage of Fiso Lounge by members of the public; 2) the detention and/or interrogation of upwards of 200 University of Delaware Students without reasonable suspicion, probable cause or related legal protections, again, designed to intimidate and scare away customers of Fiso Lounge in the future; 3) repeated verbal offers of money to Fiso security staff look the other way to allow underage patrons to leave their segregated area to illegally purchase alcohol (said offers were refused); 4) intentionally distracting security staff to allow underage patrons to "sneak" by security to illegally purchase alcohol; and 5) the illegal confiscation of Plaintiff, Frank Funaro's legally possessed fire arm:

125. During their December 2, 2010 visit to the Plaintiffs' place of business, Defendant, Sergeant William LaTorre, Trooper Gall, Trooper McGrath and or John or Jane Does, 50 - 100 Pennsylvania State Police Officers falsely accused Plaintiffs'

of knowingly and intentionally serving alcohol to minors, and falsely arrested Plaintiff Frank Funaro;

126. Plaintiff Frank Funaro spent 12 hours in illegal detention;

127. On December 2, 2010, the Philadelphia District Attorney's Office declined to formally charge Plaintiff, Frank Funaro, with any crime and he was released from custody;

128. On December 3, 2010 in the very early morning hours undersigned Counsel left a message for Chief Deputy City Solicitor Craig Straw complaining of theses developments;

129. On or about December 6, 2010, undersigned Counsel and Mr. Straw spoke on the telephone and it was requested once again that Mr. Straw look into this matter. Thereafter, Mr. Straw began again his due diligence by among other things contacting Defendant Tony Washington and Defendant William La Torre;

130. On or about December 10, 2010, Defendant, Sergeant La Torre, after speaking to Mr. Straw, contacted undersigned Counsel to state that he was investigating the circumstances of the Philadelphia District Attorney's Office refusing to file formal charges, that he was now going to obtain an arrest warrant, and wanted to arrange Plaintiff Funaro's voluntary surrender. He stated further that there was no hurry; he would be off work until Monday, December 13, 2010. He was told that ether undersigned Counsel or Plaintiffs' criminal attorney would call him back;

131. Defendant William LaTorre then called and left a message on Plaintiff, Frank Funaro's, home telephone;

132. On Monday, December 13, 2010, undersigned Counsel served legal notice, and requested an official investigation of the December 2, 2010 raid and illegal arrest, and its connection to the prior illegal conduct on the part of the City of Philadelphia, its agents, servants, and employees, and requesting that someone stop the continuing illegal conspiracy and retaliation as outlined in this complaint. Said correspondence was served on following individuals, via FAX and U.S. Mail as indicated: 1) Attorney General and Governor Elect, Tom Corbett; 2) Patrick J. Stapleton, Esq., Chairman, PLCB; 3) Colonel Frank E. Pawlowski, Commissioner, Pennsylvania State Police; 4) Jane Mechior, Director of Licensing, PLCB; 5) Major John P. Lutz, Director, Pennsylvania State Police – Bureau of Liquor Control Enforcement; 6) Craig Straw, Chief Deputy City Solicitor, City of Philadelphia; and Defendants, William Butler, Charles Ramsey, Frances Burns, Dominic Verdi, Edward Jefferson, Tony Washington, John Massi, and William LaTorre (See Exhibit I - Plaintiffs' Correspondence of December 13, 2010);

133. Once again nothing was done in response and or to investigate the allegations of illegal conduct;

134. On or about December 15, 2010, Plaintiff, Frank Funaro, was informed by his criminal attorney, that a warrant had been issued for his arrest and that he should surrender himself on December 16, 2010 at the First Police District in the City of Philadelphia;

135. As the result of the continuing conspiracy to violate the Constitutional rights of the Plaintiffs, and in retaliation for the exercise by the Plaintiffs of their First Amendment rights to complain to City and State officials about the conduct

complained of in this Complaint, and/or for the exercise by the Plaintiffs' of their Due Process rights before the Board, and/or the May 3, 2009 incident in the parking lot East of Fiso Lounge. Defendants, Tony Washington, John Massi, William LaTorre, Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello, Trooper Gall, and Trooper McGrath, caus ed further retaliation to occur and/or participated with Sergeant William LaTorre in specific conduct to have this warrant issued. Sergeant William LaTorre and all concerned knew before, during, and after, the warrant's issuance that the allegations that Plaintiff Frank Funaro had knowingly and intentionally provided alcohol to minors, and/or had conspired to do so were false;

136. After his surrender to the Philadelphia Police Department on December 16, 2010, Plaintiff, Frank Funaro, spent 18.5 hours illegally detained;

137. On or about January 22, 2011, Defendants Police Officer Leary and Police Officer Basil responded to Fiso Lounge as a result of a call being placed by Fiso staff. Fiso Staff requested the presence of the police because of two patrons being unruly inside the premises, thereafter refusing to leave the premises, and breaking the property of the Plaintiffs;

138. As the result of the continuing conspiracy to violate the Constitutional rights of the Plaintiffs, and in retaliation for the Plaintiffs' exercise of their Constitutional rights in bringing the issues averred in this complaint to the attention of City officials, and/or for the exercise by the Plaintiffs' of their Due Process rights before the Board, and/or the May 3, 2009 incident in the parking lot East of Fiso Lounge, orchestrated primarily by Tony Washington, John Massi, William LaTorre,

Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello. Officers Leary and Basil specially refused Plaintiffs direct request to take police action against said patrons, and or to document the incident as complained of by Plaintiffs. After unreasonably and illegally, refusing service to Fiso staff, Officers Basil and Leary, instead credited the obviously false allegations of the unruly patrons, filing a police report on that basis and advising said patrons to file a private criminal complaint, and or how to otherwise file complaint against Fiso. This was despite the fact that the false allegations described by the unruly patrons constituted felonies which authorized said officers to make an arrest on the spot if they truly believed the false charges of the patrons;

139. As the result of the continuing conspiracy to violate the Constitutional rights of the Plaintiffs, and in retaliation for the Plaintiffs' exercise of their Constitutional rights in bringing the issues averred in this complaint to the attention of City officials, and or for the exercise by the Plaintiffs' of their Due Process rights before the Board, and or the May 3, 2009 incident in the parking lot East of Fiso Lounge, orchestrated primarily by Tony Washington, John Massi, William LaTorre, Dominic Verdi, Kenneth Gassman, Edward Jefferson, Ann Pasquariello, Officer Leary and Basil took it upon themselves to falsely and maliciously inform the unruly patrons that the police had had "constant problems" with Fiso Lounge for a period of time that was longer than Fiso Lounge has been in existence;

140. Counsel's November 2, 2009 correspondence to the City also contained a Right to Know Request under Pennsylvania Law requesting various documents designed to, among other things: 1) conduct proper pre-suit investigation into the complained of

events before deciding whether to bring a lawsuit: 2) attempt to give the City an opportunity to substantiate what the Plaintiffs knew to be false claims made by various defendants; and 3) determine the policies, procedures, regulations and training received by, or applicable to, employees of the City of Philadelphia Police Department and or Department of License and Inspections in regard to regulatory of administrative searches and the regulation and enforcement of the nuisance laws of the City of Philadelphia (See Exhibit D);

141. Despite waving any legal protections that may have applied by offering public testimony at the June 2, 2009 Board hearing that police officers had been injured during the May 3, 2009 incident in the parking lot East of Fiso Lounge, the City refused to produce documents to substantiate said injuries or claims, or identify said officers;

142. Despite the fact that the City produced testimony before the Licenses and Inspection Review Board, and/or produced the false "complaints" of private citizens at said hearing, indicating that underage drinking was a regular occurrence at Fiso Lounge, the City produced no documents reflecting any calls or complaints made to the Philadelphia Police Department, and or the Department of Licenses and Inspection concerning underage drinking at Fiso Lounge, nor were any official reports produced reflecting arrests, convictions, or even Police Department investigations concerning under age drinking at Fiso Lounge;

143. Despite the fact that the City produced testimony before the Licenses and Inspection Review Board, and/or produced the "complaints" private citizens at said hearing, indicating that prostitution was a regular occurrence at Fiso Lounge, the

City produced no documents reflecting any calls or complaints made to the Philadelphia Police Department, and/or the Department of Licenses and Inspection concerning prostitution, nor were any official reports produced reflecting arrests, convictions, or even Police Department investigations concerning prostitution at Fiso Lounge;

144. Despite the fact that the City produced testimony before the License and Inspection Review Board, and/or produced the "complaints" of private citizens at said hearing, indicating that drug dealing was a regular occurrence at Fiso Lounge, the City produced no documents reflecting any calls or complaints made to the Philadelphia Police Department, and/or the Department of Licenses and Inspection concerning drug dealing, nor were any official reports produced reflecting arrests, convictions, or even Police Department investigations concerning drug dealing at Fiso Lounge;

145. Despite the fact that the City produced testimony before the License and Inspection Review Board, and/or produced the "complaints" of private citizens at said hearing, indicating that overcrowding was a regular occurrence at Fiso Lounge, the City produced no documents reflecting any calls or complaints made to the Philadelphia Police Department, and/or the Department of Licenses and Inspection concerning overcrowding, nor were any official reports produced reflecting arrests, convictions, or even Police Department investigations concerning overcrowding at Fiso Lounge;

146. Despite the fact that Defendant, Edward Jefferson, represented to the Board that he had "over 20" witnesses to substantiate the false allegations made by the City

during that hearing, in response to the Plaintiffs' right to Know Request (which specifically asked for these documents), the City produced only three written complaints of private citizens all of which were statements falsely generated at the direction of Defendant, John Massi. Despite the fact that these statements were presented to public officials, and/or at the public hearing before the Board, the City redacted the addresses of said witnesses;

147. In the 7 plus years Fiso Lounge has been in operation, agents of the Commonwealth of Pennsylvania Liquor Control Board and/or State Police have made numerous routine undercover enforcement investigations at or near the premises of Fiso Lounge. After each undercover investigation a letter is sent from the Commonwealth to Fiso Lounge indicating any violations of the regulations and laws of the Commonwealth, including but limited to those concerning underage drinking, drug dealing, prostitution, or overcrowding. Prior to December 2, 2010, Fiso Lounge had never been issued a citation or violation as a result of any of these investigations for underage drinking, drug dealing, prostitution, or overcrowding;

148. The City of Philadelphia indicated in its response to the Plaintiffs' Right to Know request that there are no documents, records, training materials, regulations, or policies concerning administrative inspections, or any of the same material in regard to the Constitutional obligations of employees, and/or the limitations placed on employees as a result of the requirements of the United States Constitution during the execution of administrative inspections, as it relates to employees of the City of Philadelphia Department of Licenses and Inspection. In fact no such training exists;

149. The City of Philadelphia indicated in its response to the Plaintiffs' Right to Know request that there are no documents, records, training materials, regulations, or policies concerning administrative inspections, or any of the same material in regard to the Constitutional obligations of employees, and or the limitations placed on employees as a result of the requirements of the United States Constitution during the execution of administrative inspections, as it relates to employees of the City of Philadelphia Police Department. In fact no such training exists;

150. The City of Philadelphia indicated in its response to the Plaintiffs' Right to Know request that there are no documents, records, training materials, regulations, or policies concerning the interpretation or application of the City's nuisance statutes, or any of the same material in regard to the Constitutional obligations of employees, and/or the limitations placed on employees as a result of the requirements of the United States Constitution in relation to complaints of nuisance, investigation of nuisances, or the prosecution of business establishments subject to the City's Nuisance statutes, as it relates to employees of the City of Philadelphia Department of Licenses and Inspection. In fact no such training exists;

151. The City of Philadelphia indicated in its response to the Plaintiffs' Right to Know request that there are no documents, records, training materials, regulations, or policies concerning the interpretation or application of the City's nuisance statutes, or any of the same material in regard to the Constitutional obligations of employees, and/or the limitations placed on employees as a result of the requirements of the United States Constitution in relation to complaints of nuisance, investigation of nuisances, or the prosecution of business establishments subject to the City's

Nuisance statues, as it relates to employees of the City of Philadelphia Police Department. In fact no such training exists;

152. In response to the Plaintiffs' Right to Know requests the City of Philadelphia was not able to produce any documents to demonstrate the names or assignments of any of the individuals involved in the two above cited illegal seizures of the Plaintiffs' property, nor any reports chronicling any of the events that occurred during said raids;

**First Cause of Action – Conspiracy – First Amendment – Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, , John or Jane Does, John or Jane Does, 50 - 100 Pennsylvania State Police Officers, John or Jane Does, 55 - 105 City of Philadelphia Police Officers, Police Officer Leary, Police Officer Basil, Trooper Gall, and Trooper McGrath**

153. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 152 of Plaintiffs' complaint as though same were fully set forth herein at length;

154. Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, John or Jane Does, 50 - 100 Pennsylvania State Police Officers, Police Officer Leary, and Police Officer Basil and John or Jane Does, 55 - 105 City of Philadelphia Police Officers, Trooper Gall, and Trooper McGrath conspired to chill through intimidation the exercise of the Plaintiffs' First Amendment rights, and or to retaliate for the exercise of those rights, and in furtherance of said conspiracy participated in and or caused the unlawful and unreasonable actions complained of in Plaintiffs' Complaint;

**Second Cause of Action – Conspiracy – Fourth Amendment – Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, , John or Jane Does, 50 - 100 Pennsylvania State Police Officers, and John or Jane Does, 55 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority Police Officers, Trooper Gall, and Trooper McGrath**

155. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 154 of Plaintiffs' complaint as though same where fully set forth herein at length;

156. The Defendants, Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, , John or Jane Does, 50 - 100 Pennsylvania State Police Officers, and John or Jane Does, 55 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 25 Philadelphia Housing Authority Police Officers, Trooper Gall, and Trooper McGrath, conspired in retaliation for the May 3, 2009 alleged injury of police officers in a parking lost East of Fiso Lounge, and for the Plaintiffs'' exercise of their Constitutional rights, and/or to deprive the Plaintiffs' of their Constitutional rights, to execute an illegal search and seizure of the Plaintiffs' place of business, including but not limited to an excessive use of force, in an effort to drive the Plaintiffs' out of business by scaring customers away;

Third Cause of Action – Conspiracy – 14th Amendment – Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, John or Jane Does, 50 - 100 Pennsylvania State Police Officers, and John or Jane Does, 55 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority Police Officers, Walter Williams; Anthony Gamble; Christopher Balco, Patrick McKee; Jose Combs; James Lippi; Tony Millington; Ronald Ginnetti; Nathaniel Harper; Frank Holmes; Pamela Canada; Michael Kubiak; Christopher Barolo; Michael Bruson; Michael Perkins; Christopher Rubino; Lloyd Durham; Kurt Myers; Shawn Dobbins; James Moran; Andrea Williams; Micah Chichearo; Konst Apostolou; Anthony Anzideo; Jose Innamorato; Alex Branch; Sydemy Joanis; David Anzideo; and Mousa Hassan, Police Officer Leary,  Police Officer Basil, Trooper Gall, and Trooper McGrath

157. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 156 of Plaintiffs' complaint as though same where fully set forth herein at length;

158. The Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, John or Jane Does, 50 - 100 Pennsylvania State Police Officers, and John or Jane Does, 55 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50

Philadelphia Housing Authority Police Officers. Walter Williams: Anthony Gamble: Christopher Balco. Patrick McKee: Jose Combs: James Lippi: Tony Millington: Ronald Ginnetti: Nathaniel Harper: Frank Holmes: Pamela Canada: Michael Kubiak: Christopher Barolo: Michael Bruson: Michael Perkins: Christopher Rubino: Lloyd Durham: Kurt Myers: Shawn Dobbins: James Moran: Andrea Williams: Micah Chichearo: Konst Apostolou: Anthony Anzideo: Jose Innamorato: Alex Branch: Sydemy Joanis: David Anzideo: and Mousa Hassan. Police Officer Leary. and Police Officer Basil. Trooper Gall. and Trooper McGrath. in retaliation for the May 3. 2009 alleged injury of police officers in a parking lost East of Fiso Lounge. and/or for the Plaintiffs' exercise of their Constitutional rights. and/or to deprive the Plaintiffs' of the Constitutional rights. conspired to deprive the Plaintiffs of their right to Due Process of Law. by engaging the unlawful and or unreasonable acts complained of in Plaintiffs' Complaint:

**Fourth Cause of Action – Retaliation – 1st & 14th Amendments, Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler. John or Jane Does, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and/or John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority Police Officers, Police Officer Leary, Police Officer Basil, Trooper Gall, and Trooper McGrath;**

159. The Plaintiffs hereby incorporate by reference. paragraphs 1 - 158 of Plaintiffs' Complaint as though same where fully set forth herein at length:

160. Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, , John or Jane Does, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and or John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority Police Officers, Police Officer Leary, Police Officer Basil, Trooper Gall, and Trooper McGrath retaliated against the Plaintiffs for the exercise by the Plaintiffs of their First Amendment and Fourteenth Amendment rights as outlined in the preceding paragraphs of Plaintiffs' Complaint;

**Fifth Cause of Action – [4th] Amendment – Unreasonable Search and Seizure – Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, , John or Jane Does, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and/or John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority Police Officers, Trooper Gall, and Trooper McGrath**

161. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 160 of Plaintiffs' Complaint as though same where fully set forth herein at length;

162. Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, John or Jane

Does, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and or John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority, Trooper Gall, and Trooper McGrath caused, directed, approved of, or participated in unlawful searches and seizures of the Plaintiffs' place of business, as outlined in the preceding paragraphs of Plaintiffs' Complaint.

**Sixth Cause of Action – 14th Amendment Violations. Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, John or Jane Does, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and/or John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority Police Officers, Trooper Gall, and Trooper McGrath**

163. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 163 of Plaintiffs' complaint as though same where fully set forth herein at length;

164. The Defendants, Tony Washington, John Massi, Edward Jefferson, William LaTorre, Ann Pasquariello, Kenneth Gassman, Dominic Verde, Thomas Butler, , John or Jane Does, and John or Jane Does, 1 - 105 City of Philadelphia Police Officers, 1 - 100 Pennsylvania State Police Officers, and or John or Jane Does, 1 - 105 City of Philadelphia Police Officers, John or Jane Does, 1 - 50 SEPTA Police Officers, and John or Jane Does, 1 - 50 Philadelphia Housing Authority Police

Officers. Trooper Gall. and Trooper McGrath caused. directed. approved of. or participated in action. as outlined in the preceding paragraphs of Plaintiffs' Complaint that deprived the Plaintiffs' their Due Process. Property. Contract and other rights protected by the Constitution of the United States. these action include. but are not limited to instituting without legal justification or cause a Cease Operations order. thereby necessitating the later hearing before the Board:

**Seventh Cause of Action – Supervisory Liability – Defendant, Everett Gillison**

165. The Plaintiffs hereby incorporate by reference. paragraphs 1 - 165 of Plaintiffs' complaint as though same where fully set forth herein at length:

166. Defendant. Everett Gillison. was aware of the excesses of the Philadelphia Police Department. was specifically aware of the illegal and unreasonable conduct of Defendant Dominic Verdi prior to the Plaintiffs' November 2009 correspondence requesting an investigation. and after receiving this correspondence his specific knowledge was increased:

167. Defendant Everett Gillison. received and read  Plaintiffs' correspondence of November 20 09 complaining of  retaliation. and connecting the exercise of the Plaintiffs'' Constitutional rights to this retaliation:

168. Defendant Everett Gillison. was made aware and or actually read Plaintiffs' February 2010 correspondence complaining that no investigation had been undertaken by the City as a result of the November. 2009 correspondence of the Plaintiffs'. and more specifically outlining the illegal conduct of the Philadelphia Police Department and or Dominic Verdi:

169. Defendant Everett Gillison made a deliberate choice not to intervene and stop this illegal behavior, because he approved and acquiesced in the conduct of the named Police Department defendants, as well as Defendant Dominic Verdi, who was also under his control and supervision;

170. Defendant, Everett Gillison in thereby liable to Plaintiffs for the injuries and damages complained of;

**Eighth Cause of Action – Supervisory Liability – Defendant, Charles Ramsey**

171. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 170 of Plaintiffs' complaint as though same where fully set forth herein at length;

172. Defendant, Charles Ramsey, was aware of the excesses of the Philadelphia Police Department, was specifically aware of the illegal and unreasonable conduct of Defendant Dominic Verdi prior to the Plaintiffs' November 2009 correspondence requesting an investigation, and after receiving this correspondence his specific knowledge was increased;

173. Defendant Charles Ramsey, received and read  Plaintiffs' correspondence of November 13, 2009 complaining of retaliation, and connecting the exercise of the Plaintiffs' Constitutional rights to this retaliation;

174. Defendant Charles Ramsey, was made aware and or actually read Plaintiffs' February, 2010 correspondence complaining that no investigation had been undertaken by the City as a result of the November, 2009 correspondence of the Plaintiffs', and more specifically outlining the illegal conduct of the Philadelphia Police Department and or Dominic Verdi;

175. Defendant, Charles Ramsey received and read the undersigned Counsel's October 10, 2010 correspondence complaining about further illegal conduct on the part of the Philadelphia Police Department, as it related to Defendant, John Massi, and Defendant Dominic Verdi, and their continued illegal and unreasonable conduct;

176. Defendant Charles Ramsey made a deliberate choice not to intervene and stop this illegal behavior, because he approved and acquiesced in the conduct of the named Police Department defendants, as well as Defendant Dominic Verdi, who was nominally under his control and supervision;

177. Defendant, Charles Ramsey in thereby liable to Plaintiffs for the injuries and damages complained of;

## Ninth Cause of Action – Supervisory Liability -- Defendant, Frances Burns

178. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 178 of Plaintiffs' complaint as though same where fully set forth herein at length;

179. Defendant, Frances Burns, was aware of the excesses of the City of Philadelphia Department of Licenses and Inspection, was specifically aware of the illegal and unreasonable conduct of Defendant Dominic Verdi prior to the Plaintiffs' November 2009 correspondence requesting an investigation, and after receiving this correspondence her specific knowledge was increased;

180. Defendant, Frances Burns,   received and read Plaintiffs' correspondence of November 13, 2009 complaining of retaliation, and connecting the exercise of the Plaintiffs' Constitutional rights to this retaliation;

181. Defendant Frances Burns, was made aware and or actually read Plaintiffs' February, 2010 correspondence complaining that no investigation had been

undertaken by the City as a result of the November, 2009 correspondence of the Plaintiffs', and more specifically outlining the illegal conduct of the Philadelphia Police Department and or Dominic Verdi;

182. Defendant, Frances Burns received and read the undersigned Counsel's October 10, 2010 correspondence complaining about further illegal conduct on the part of the Philadelphia Police Department, as it related to Defendant, John Massi, and Defendant Dominic Verdi, and their continued illegal and unreasonable conduct;

183. Defendant Frances Burns made a deliberate choice not to intervene and stop this illegal City, because she approved and acquiesced in the conduct of the named defendants employed by the Depart of Licenses and Inspection, as well as Defendant Dominic Verdi, who despite being "detailed" to the Police Department was under her control and supervision;

184. Defendant, Frances Burns in thereby liable to Plaintiffs for the injuries and damages complained of;

## Tenth Cause of Action – Supervisory Liability – Defendant, Tony Washington

185. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 185 of Plaintiffs' complaint as though same where fully set forth herein at length;

186. Defendant, Tony Washington, was aware of the illegal, conspiratorial, unprofessional, conduct of the named Defendants of the 17th Police District who were under his command and he participated in, coordinated and encouraged said actions; He was specially ware of the activities of Sergeant Massi and likewise participated, coordinated and encouraged said actions;

187. Defendant, Tony Washington, received and read Plaintiffs' correspondence of November 13, 2009 complaining of retaliation, and connecting the exercise of the Plaintiffs' Constitutional rights to this retaliation;

188. Defendant Tony Washington, was made aware and or actually read Plaintiffs' February, 2010 correspondence complaining that no investigation had been undertaken by the City as a result of the November, 2009 correspondence of the Plaintiffs', and more specifically outlining the illegal conduct of the Philadelphia Police Department and or Dominic Verdi;

189. Defendant, Tony Washington received and read the undersigned Counsel's October 10, 2010 correspondence complaining about further illegal conduct on the part of the Philadelphia Police Department, as it related to Defendant, John Massi, and Defendant Dominic Verdi, and their continued illegal and unreasonable conduct;

190. Defendant Tony Washington made a deliberate choice not to intervene and stop this illegal City, because he approved, participated in, directed, coordinated, an o otherwise acquiesced in the conduct of the named Police Department defendants, as well as Defendant Dominic Verdi;

191. Defendant, Tony Washington is thereby liable to Plaintiffs for the injuries and damages complained of;

### Eleventh Cause of Action – Supervisory Liability – Defendant, John Massi

192. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 192 of Plaintiffs' complaint as though same where fully set forth herein at length;

193. Defendant, John Massi, was aware of the illegal, conspiratorial, unprofessional, conduct of the named Defendants of the 17th Police District who were under his command and he participated in, coordinated and encouraged said actions;

194. Defendant, John Massi, received and read Plaintiffs' correspondence of November 13, 2009 complaining of retaliation, and connecting the exercise of the Plaintiffs' Constitutional rights to this retaliation;

195. Defendant, John Massi, was made aware and or actually read Plaintiffs' February, 2010 correspondence complaining that no investigation had been undertaken by the City as a result of the November, 2009 correspondence of the Plaintiffs', and more specifically outlining the illegal conduct of the Philadelphia Police Department and/or Dominic Verdi;

196. Defendant, John Massi, received and read the undersigned Counsel's October 10, 2010 correspondence complaining about further illegal conduct on the part of the Philadelphia Police Department, as it related to himself, and Defendant Dominic Verdi, and the continued illegal and unreasonable conduct;

197. Defendant, John Massi, made a deliberate choice not to intervene and stop this illegal City, because he approved and acquiesced in the conduct of the named Police Department defendants, as well as Defendant Dominic Verdi;

198. Defendant, John Massi, is thereby liable to Plaintiffs for the injuries and damages complained of;

**Twelfth Cause of Action – Supervisory Liability – Defendant, Ann Pasquariello**

199. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 199 of Plaintiffs' complaint as though same where fully set forth herein at length;

200. Defendant, Ann Pasquariello, knew specifically that since at least 1996 the City of Philadelphia has received numerous complaints about the operations of the Department of Licenses and Inspections, including but not limited to, now former Deputy Commissioner Dominic Verdi;

201. Defendant, Ann Pasquariello, knew specifically that in a particular incident in 1996, Defendant, Dominic Verdi expressed what the Plaintiffs believe and aver is still currently to position of all employees of the City of Philadelphia involved in this case, namely that the Philadelphia Code stretches so far that it "[permits them] to enter citizen's homes to inspect whenever [they] desire", and that their authority in a regulated business stretches even further to allow them the unregulated authority to shut a business down on a whim, and completely disregard Constitutional requirements;

202. Defendant, Ann Pasquariello, knew specifically that Federal Judge James McGirr Kelly noted that the City in relation to the Department of License and Inspection was "[u]ndanted by the Constitution or Supreme Court precedent...";

203. Defendant, Ann Pasquariello, knew specifically that on or about the year 2000 the City of Philadelphia paid a $350,000.00 settlement in the case of <u>Maffucci et., al. v. City of Philadelphia, et.a.l.</u>, U.S.D.C. Ed. Pa. C.A. No. 98-CV-2718, and as result was on official notice that there was woefully inadequate training for City

employees on the limitations that the Constitution of the United States placed on "administrative inspections";

204. Despite being placed on such notice Defendant, Ann Pasquariello, despite her authority to do so, purposely failed to correct this problem or institute adequate training or regulations;

205. Defendant, Ann Pasquariello, knew specifically that prior to January of 2008, Defendants, Dominic Verdi and Kenneth Gassman had been the subject of numerous complaints to the City of Philadelphia, concerning their violations of the Constitution of the United States and other unlawful and unreasonable behavior;

206. It is averred and believed that Defendant, Ann Pasquariello, failed to take decisive action because of Mr. Verdi's rumored ties to former State Senator Vincent Fumo, among other things;

207. Well prior to Plaintiffs' November, 2029 correspondence Defendant, Ann Pasquariello, knew specially that Defendant, Edward Jefferson was acting not as attorney, but as an investigator and supervisor of the actions of Defendants Verdi and Gassman, and that in any event that the Law Department had not provided either defendant with adequate training on regard to the restrictions placed on administrative inspections by the United States Constitution;

208. Well prior to Plaintiffs' November 2009 correspondence, Defendant, Ann Pasquariello, knew that the Law Department was not providing and training to employees of the Department of Licenses and Inspection concerning the restrictions placed on administrative inspections by the United States Constitution;

209. Defendant. Ann Pasquariello. made a deliberate choice not to intervene and stop this illegal behavior. because she approved and acquiesced in the conduct of the Defendants Jefferson and Gassman. as well as Defendant Dominic Verdi. over whom she had authority:

210. Defendant. Ann Pasquariello. was and is the direct supervisor of Defendant. Edward Jefferson:

211. Defendant. Ann Pasquariello. exercised supervisory control over the actions of Defendants Gassman and Verdi at all times material to this Complaint:

212. Defendant. Ann Pasquariello. was directly involved in the planning. coordinating. and/or execution of the illegal raids and other illegal activities occurring on the Plaintiffs' premises:

213. Defendant. Ann Pasquariello. with specific prior knowledge. and specific legal notice of the illegal conduct of the Defendants. Jefferson. Verdi. and Gassman. encouraged. directed. and supported the illegal and unlawful actions of said Defendants:

214. Defendant. Ann Pasquariello. is thereby liable to Plaintiffs for the injuries and damages complained of:

215. **Thirteenth Cause of Action – Supervisory Liability – Defendant, Thomas Butler**

216. The Plaintiffs hereby incorporate by reference Paragraphs 1 - 214 of their Complaint as though same were fully set forth herein at length;

217. Defendant Thomas Butler is the supervisor of Defendants. LaTorre. Gall. McGrath. John or Jane Does 50 – 100 Pennsylvania Sate Police Officers:

218. Defendant Thomas Butler was specifically aware of the illegal and unreasonable activities and plans of said defendants, and directed, supported and assisted in coordinating said events and activities;

219. Defendant, Defendant, Thomas Butler, is thereby liable to Plaintiffs for the injuries and damages complained of;

## Fourteenth Cause of Action – Supervisory Liability – Defendant, William LaTorre

220. The Plaintiffs hereby incorporate by reference Paragraphs 1 - 221 of their Complaint as though same were fully set forth herein at length;

221. Defendant William LaTorre is the supervisor of Defendants, Gall, McGrath, and John or Jane Does 50 - 100 Pennsylvania Sate Police Officers and o all Pennsylvania State Police officer named or referred to in this Complaint;

222. Defendant William LaTorre was specifically aware of the illegal and unreasonable activities and plains of said defendants, and directed, supported and assisted in coordinating said events and activities, and was physically present during these events;

223. Defendant, William LaTorre, is thereby liable to Plaintiffs for the injuries and damages complained of;

## Fifteenth Cause of Action – Municipal Liability – Constitutional Claims

224. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 225 of Plaintiffs' complaint as though same where fully set forth herein at length;

225. The City of Philadelphia's officially adopted and procedurally enacted laws and regulations concerning administrative inspections, including but not limited to the

Charter of the City of Philadelphia. § 5-1004 – "Right of Entry", and : § 9-703 of the Philadelphia Code – Special Assembly Occupancies, are directly in violation of the Constitution of the United States, are therefore unconstitutional, and were the direct and proximate cause of the legal violations, inquires and damages suffered by the Plaintiffs:

226. The City of Philadelphia's officially adopted policy to vest respective investigative authority and responsibility in the various contradicting, overlapping, and illogical, agencies of government charged with investigating the misconduct of police officers and or other City employees, was the direct and proximate cause of the legal violations, injuries, and damages suffered by the Plaintiffs. Said agencies include, but are not limited to: 1) the Police Advisory Commission; 2) the Office of Integrity and Accountability reporting to the Office of the Deputy Mayor for Public Safety; 3) the Internal Affairs Division of the Philadelphia Police Department; 4) the Law Department of the City of Philadelphia; 5) the City Controller of the City of Philadelphia; 6) the City of Philadelphia Board of Ethics; 6) the Office of the Inspector General, City of Philadelphia; and 7) the Office of the Philadelphia District Attorney;

227. The Defendant, City of Philadelphia, is liable for the injuries and damages of the Plaintiff because it has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, customs, and official policy and the need for more training generally, and specifically in these areas wherein " in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need.". The City also failed to adequately provide for supervision and investigation, or discipline in said areas. More specifically:

A) Continuing legal education and other training for the attorneys employed by the City of Philadelphia Law Department's, Code Enforcement Unit, concerning the Constitution of the United States and the Constitution of Pennsylvania generally or as they relate, to, or place limits on, any right the City might assert to conduct administrative inspections, the manner in which said inspections are conducted, the enforcement of the City's Nuisance ordinances, and or the proper legal standards and evidence required in prosecuting before the City's Licenses and Inspection Review Board ;

B) Continuing legal education and other training for the employees employed by the City of Philadelphia, Department of Licenses and Inspection and or the Philadelphia Police Department, concerning the Constitution of the United States and the Constitution of Pennsylvania generally, or as they relate, to, or place limits on, any right the City might assert to conduct administrative inspections, the manner in which said inspections are conducted, and or the enforcement of the City's Nuisance ordinances;

C) Continuing legal education and other training for the attorneys employed by the City of Philadelphia Law Department's, Code Enforcement Unit, the City of Philadelphia Department of Licenses and Inspection, and the City of Philadelphia Police Department concerning the Constitution of the United

States and the Constitution of the Commonwealth of Pennsylvania generally or as they relate, to, or place limits on, the granting or the denial of Special Assembly Licenses in the City of Philadelphia;

228. The City's policy of establishing the Task Force without statutory framework, no governing regulation or polices as to its specific conduct and no one governmental entity or person clearly accountable for its actions, and no requirement that official reports be submitted as a result of the actions or operations of the Task Force;

229. The practice and/or custom of the Philadelphia Police Department and its employees to unlawfully under the guise of an administrative inspection, retaliate against businesses who while sometimes causing a police presence, otherwise annoyed police officials, and/or refused the unlawful and unreasonable demands of the agents, servants, of the city of Philadelphia, and/or exercised their Constitutional rights to protest the actions of the city of Philadelphia, in an effort to drive their customers away and close the business, without due Process of Law as guaranteed by the Constitution of the United States;

230. The City of Philadelphia Law Department's custom and practice of not updating and/or providing guidance to the Department of Licenses and Inspection when changes in the law modified the reach of administrative inspections in the City of Philadelphia;

231. The City of Philadelphia's custom and practice of allowing Defendants Jefferson and Pasquariello to act as supervisors of Defendants Verdi and Gassman, while completely being in adequately trained in the U.S. Constitution and it limitations on "administrative inspections" and/or to act unsupervised supervisors of Defendants

Gassman and Verdi and or the final policy makers of the City delegating their authority to Defendants Pasquariello and Jefferson in regard to the operations of the participants in the Task Force;

### Ninth Cause of Action – Equitable Relief

232. The Plaintiffs hereby incorporate by reference, paragraphs 1 - 233 of Plaintiffs' complaint as though same where fully set forth herein at length;

233. The Plaintiffs request that this Court enter an order to enjoin the City of Philadelphia from conducting administrative inspections pursuant to the Charter of the City of Philadelphia, § 5-1004 – "Right of Entry", and : § 9-703 of the Philadelphia Code – Special Assembly Occupancies based on their unconstitutional nature;

234. The Plaintiffs request that this Court enjoin the City of Philadelphia, it agents, servants, or employees, from reporting to any intra-governmental agency, and state or federal governmental agency, whether informally or formally, that Fiso Lounge is a nuisance bar, and or that any lawful privilege or right should be denied the Plaintiffs for any events occurring in the years 2008, 2009 & 2010;

### STATE LAW CLAIMS

### Breach of Contract, Defendant, City of Philadelphia Only

235. The Plaintiffs' hereby incorporates by reference paragraphs 1 - 236 of Plaintiffs' Complaint as though same where fully set forth herein at length;

236. The actions of Defendants, Walter Williams; Anthony Gamble; Christopher Balco, Patrick McKee; Jose Combs; James Lippi; Tony Millington; Ronald Ginnetti; Nathaniel Harper; Frank Holmes; Pamela Canada; Michael Kubiak;

Christopher Barolo; Michael Bruson; Michael Perkins; Christopher Rubino; Lloyd Durham; Kurt Myers; Shawn Dobbins; James Moran; Andrea Williams; Micah Chichearo; Konst Apostolou; Anthony Anzideo; Jose Innamorato; Alex Branch; Sydemy Joanis; David Anzideo; and Mousa Hassan, in failing to adhere to the terms of the City's contract with the Plaintiffs' to provide security under the supervision and direction of the Plaintiffs constitutes a breach of contract by the City of Philadelphia. The plaintiffs are entitled to a refund of the monies paid to the City Philadelphia for said services, and for a release from the City for any claims it may have for any unpaid balance;

**WHEREFORE,** the plaintiffs demand in excess of $1,000,000.00 in monetary damages and other relief in the form of:

- Compensatory damages as to all defendants for the loss of the value of their business, lost revenue, damaged business reputation, and/or the illegal detention and arrest of Plaintiff Frank Funaro;

- Reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

- Such other further relief as appears reasonable and just;

- A jury trial as to each defendant and as to each count of Plaintiff's complaint.

By: _____

Leon A. King II
Attorney I.D. No. 62000
240 E. Roumfort Road
Philadelphia, PA 19119
(610-724-8967
Counsel for Plaintiffs

Exhibit A

Transcript of Hearing Before the Board, Page 11, Lines 5 -7- Notes of Undersigned Counsel Redacted

COPY

BOARD OF LICENSES AND INSPECTIONS REVIEW
CITY OF PHILADELPHIA

- - - - -

IN RE:  LEXIE JA INC./T/A FISO LOUNGE   )  No: 9165₄

NTF Cease Operations

- - - -

Tuesday, June 2nd, 2009
1515 Arch Street
Philadelphia, PA

- - - -

BEFORE:  ANTHONY P. RABUTINO, CHAIRMAN
CLAIRE S. GATZMER, PANEL MEMBER
DANNY RODRIGUEZ, PANEL MEMBER
TIMOTHY A. KEPNER, PANEL MEMBER

- - - -

Hearing held before Panel Members, in
Courtroom 404, at the above address, commencing at
2:00 p.m., on the above date, before Krista Morici, a
Professional Court Reporter and Notary Public.

CLASS ACT REPORTING AGENCY
REGISTERED PROFESSIONAL REPORTERS
1420 Walnut Street           133H Gaither Drive
Suite 1200                   Mt. Laurel, NJ 08054
Philadelphia, PA 19103       (856) 235-5108
(215) 928-9760

a6984310-dd2f-42ef-a872-ccc561291032

L&I Hearing - In Re: Lexie JA Ind. T A Piso Lounge

1          MR. JEFFERSON:  Certainly.  Sergeant Massi,

2    please.

3          CHAIRMAN RABUTINO:  How many witnesses do

4    you have?

5          MR. JEFFERSON:  I'm going to have two

6    witness.  But I'm going to have about 20 witnesses but

7    I'm going to condense it to two.

8    BY MR. JEFFERSON:

9    Q.    Sergeant, I'll ask you to, first of all,

10   identify yourself and spell your last name and give

11   your unit assignment.

12   A.    Sergeant John Massi, M-A-S-S-I.  Badge 8571

13   assigned to the 17th District.

14         MR. JEFFERSON:  With the permission of the

15   Board can I begin?

16         CHAIRMAN RABUTINO:  Yeah.  But, you know

17   what, I think it's the best interest of everyone --

18   you've been personally out at this site?

19         SERGEANT MASSI:  Correct, sir.

20         CHAIRMAN RABUTINO:  And you're familiar

21   with the operation?

22         SERGEANT MASSI:  Yes, I am.

23         CHAIRMAN RABUTINO:  In your own words tell

24   us what you've done there and how many times you have

a6984310-dd2f-42ef-a872-ccc561291032

Exhibit B

Transcript of Hearing Before the Board, Page 144

BOARD OF LICENSES AND INSPECTIONS REVIEW
CITY OF PHILADELPHIA

- - - - -

IN RE:   LEXIE JA INC. T/A FISO LOUNGE    )   No: 9165,

NIF Cease Operations

- - - -

Tuesday, June 2nd, 2009
1515 Arch Street
Philadelphia, PA

- - - -

BEFORE:   ANTHONY P. RABUTINO, CHAIRMAN
CLAIRE S. GATZMER, PANEL MEMBER
DANNY RODRIGUEZ, PANEL MEMBER
TIMOTHY A. KERNER, PANEL MEMBER

- - - -

Hearing held before Panel Members, in
Courtroom 404, at the above address, commencing at
2:00 p.m., on the above date, before Krista Morici, a
Professional Court Reporter and Notary Public.

CLASS ACT REPORTING AGENCY
REGISTERED PROFESSIONAL REPORTERS
1420 Walnut Street                133H Gaither Drive
Suite 1200                        Mt. Laurel, NJ 08054
Philadelphia, PA 19103            (856) 235-5108
(215) 928-9760

144

1          MR. FUNARO:  Businesses and residences.

2          CHAIRMAN PABUTINO:  That's what it is, no

3  associations?

4          MR. FUNARO:  No associations.

5          CHAIRMAN PABUTINO:  Okay.  Very good.

6          Okay.  I polled the board and a three to

7  one vote, appeal is sustained.

8          MEMBER LEE:  Appeal sustained.

9          CHAIRMAN PABUTINO:  Appeal sustained.

10          MEMBER GATZMER:  Appeal sustained.

11          MEMBER HEPNER:  City affirmed.

12          CHAIRMAN PABUTINO:  Thank you, gentlemen.

13          MR. MCHUGH:  Thank you.

14          MR. JEFFERSON:  Thank you.

15                        -   -   -

16          (Whereupon, the hearing concluded at

17  approximately 4:10 p.m.)

18                        -   -   -

19

20

21

22

23

24

a6984310-dd2f-42ef-a872-ccc561291032

Exhibit C

Plaintiffs' Correspondence to City of November 2, 2009

# LEON A. KING, II

## ATTORNEY AT LAW

610-724-8967

Email: Philaking@aol.com

November 2 , 2009

Mr. Everett Gillison, Esq.
Deputy Mayor, Public Safety
City of Philadelphia
1401 J.F.K. Blvd.
14th Floor
Philadelphia, PA, 19102

Mr. Curtis R. Douglas, Esq.
Chief Accountability and Integrity Officer
City of Philadelphia
Office of the Deputy Mayor for Public Safety
1401 J.F.K. Blvd.
14th Floor
Philadelphia, PA, 19102

Ms. Frances Burns
Commissioner
City of Philadelphia
Department of Licenses and Inspection
1401 J.F.K. Blvd/11th Floor
Philadelphia, PA, 19102

Robert Nix, Jr., Esq.
Chairman
Police Advisory Commission
990 Spring Garden Street/Suite 705
Philadelphia, PA, 19123

240 East Roumfort Road
Philadelphia, PA 19119

Web Site: www.leonking.org

via Fax & U.S. Mail, RRR

Mayor Michael Nutter
City of Philadelphia
City Hall
Philadelphia, PA, 19107

Mr. Craig Straw, Esq.
Chief Deputy City Solicitor
City of Philadelphia
Law Department- Civil Rights Unit
1515 Arch Street
14th Floor
Philadelphia, PA, 1902

Mr. Richard Glazer
Chairman
City of Philadelphia
Board of Ethics
The Packard Building
1441 Samson Street/ 2nd Floor
Philadelphia, PA 19102

Ms. Amy Kurland, Esq.
Inspector General
The Curtis Center
601 Walnut Street/Suite 300 E.
Philadelphia, PA, 19106

Re:    Police Corruption, Abuse of Power, and Perjury 17th Police District: Sergeant John Massi – Abuse of Power, Official Corruption, Department of Licenses and Inspections – Request for Investigation and Request for Documents Pursuant to the Pennsylvania Right to Know Law; In RE: Fiso Lounge and Mr. Frank Funaro

Dear Mayor Nutter, Ms. Kurland, Commissioner Burns, and Messrs: Gillison, Douglas, Glazer, Nix and Straw,

1

I represent Lexie, JA, Incorporated, d/b/a as Fiso Lounge, located at 1437 South Street in the City of Philadelphia. I also represent Mr. Frank Funaro in his personal capacity, as well as his official capacity as President of Lexie, JA, Incorporated. My clients are asserting their legal rights under the laws of Pennsylvania and most certainly the Constitution of the United States (and it Amendments) to bring their complaints to the City for investigation, redress, and settlement.

My clients have been subjected to illegal searches and other illegal and arbitrary acts by the Philadelphia Police Department, in cooperation with the City's Department of Licenses and Inspection.

Specifically, throughout the 2009 calendar year, Sergeant John Massi of the 17th Police District has lead a campaign of what my client views as terroristic threats against himself personally, and large scale campaign of spreading intentional falsehoods about both of my clients to neighbors in the vicinity of the 1400 block of South Street. My clients have also been the victim of what clearly is the official, well practiced, policy of the City of Philadelphia to conduct warrantless searches (nee inspections) of businesses that are designed to incite a riot, and destroy a business by scaring away customers of establishments in disfavor with the City. Additionally, on June 2, 2009 what we believe to be perjured testimony was offered by Sergeant Massi at a hearing of the L & I Review Board.

It is also my client's belief that the acts complained of are also motivated by the fact that the majority of customers of Fiso Lounge are African American, *and reports by police personnel that the two primary actors in these events are motivated by a desire for financial kickbacks.* Therefore, Mr. Funaro is now compelled to bring these facts to light for formal redress by the City.

*You should be advised that to date my clients have suffered losses and expenses totaling approximately $168,000.00 as a result of the actions complained of. These losses and expenses are subject to continuing increases especially when attorney's fess due to my representation are considered, and further by the necessary Court action that will have to be taken to appeal the October 19th denial by the City of Mr. Funaro's application to renew his Special Amusement License.*

Mr. Frank Funaro is a family man who resides in New Jersey and has chosen to operate his business, Fiso Lounge, in the City of Philadelphia. He contributes to the economy of the City and Fiso Lounge serves as one of the anchors of economic activity and opportunity on the 1400 block of South Street. In so doing, Mr. Funaro is one of those people who is in effect fulfilling Mayor Nutter's goal of attracting businesses and employment to the City of Philadelphia. While my client recognizes an applauds the City's responsibility to enforce its ordnances, it appears the City has breached its ethical and Constitutional obligations as they relate to Mr. Funaro and Fiso Lounge, and fails to take into account the effects of its actions on Mr. Funaro's livelihood, and that of his employees.[1] The City also imposes a standard on Mr. Funaro that says "since the

---

[1] The facts as we currently understand them indicate that there may be a class of persons, similarly situated to Mr. Funaro and Fiso Lounge, which are routinely subject to violations of their Constitutional rights and the illegal and

2

patrons of Fiso are mostly African American, any incident on the 1400 block of South Street which involves African Americans, must be the fault of Frank Funaro and Fiso Lounge". The Police Department in particular has acted, and continues to act, in a completely arbitrary and capricious manner. It seems it has the unchecked authority to shut Mr. Funaro's business down, and/or to place expensive legal hurdles in his way, at the whim of one captain, or one sergeant.

Mr. Funaro has operated his business at this location for 6 years. It was not until early 2009 and the arrival of Captain Tony Washington that Mr. Funaro began to have "serious issues" with personal of the 17th Police District and the City's Department of Licenses and Inspections. Mr. Funaro has gone out of his way to cooperate with the City when issues where brought to his attention. Specifically he has: 1) met on numerous occasions with city officials and implemented all of the recommendations articulated by these officials after said meetings (often being complimented by City officials on these efforts; 2) consented to otherwise illegal searches of his premises; and 3) attempted to improve relations with the 17th Police District by meeting with officials there and requesting meetings with the current captain (Captain Washington has ignored these requests even when made through to auspices of Council President Verna's Office).

All of his efforts to cooperate with the City and insure that he is a "good neighbor" on the 1400 block of South Street, have been met by: 1) harassment and illegal threats; 2) illegal searches; and 3) the denial by the Police Department of his recent request for the renewal of his Special Amusement License (which the City reminded him he had to renew).

The major player in the series of what we believe to be illegal, unconstitutional, unethical, and criminal behavior, is Sergeant John Massi of the 17th Police District. Since Sergeant Massi has repeatedly threatened to shut Mr. Funaro's business down for retaliatory reasons and we are very concerned about his conduct, and the conduct of other police personnel in the 17th Police District after this complaint is filed. As a result, _we are requesting the transfer of Sergeant Massi out of the 17th Police District permanently, and certainly at least during the pendency of the requested investigation, and that other precautions be taken as the City deems appropriate to protect my clients from retaliation from police personnel including Captain Tony Washington of the 17th Police District._

My clients are also very concerned about retaliation by the Department of Licenses and Inspection, most specifically Mr. Dominic Verdi of the Nuisance Task Force. By reputation (and in part due to personal observation) Mr. Verdi is known as a public official illegally motivated and so arrogant in his position with the City that he feels free to act in an unprofessional and abusive manner. We would also request that Mr. Verdi be precluded in participating in any way with issues surrounding Frank Funaro and Fiso Lounge, and be instructed on the legal ramifications of retaliation.

My clients are specifically requesting of the City the following:

---

unethical actions of the City of Philadelphia. All dictated by the City's longstanding unconstitutional and otherwise illegal, policies, customs, and practices. See for example, Gillespie, et. al. v. City of Philadelphia, et. al., U.S.D.C., Ed. PA., C.A. No. 09-4810.

3

1. A formal investigation by the Integrity and Accountability Officer for the Police Department, the Inspector General, the Department of Licenses and Inspection, the Police Advisory Board, and/or the City Board of Ethics to the allegations of perjury and illegal conduct, to be more specifically outlined under separate cover;

2. An immediate cessation and review of all operations of the Nuisance Task Force, and/or related searches (nee "inspections") of businesses conducted under the City Charter by the Police Department and Department of Licenses and Inspections to ensure that moving forward they are conducted within Constitutional parameters, and that current violations cease;

3. Production of documents pursuant to the various laws of the Commonwealth, specifically the Right to Know Law (Act 3 of 2008, 65 P.S. §§ 67.101, et., seq.) in relation to the conduct complained of.

My clients stand ready to participate in the City's investigation, and you should feel free to contact them only through me as we proceed. We are also prepared to give the City a reasonable amount of time to investigate these matters, taking into consideration the financial interests and legal considerations of my clients.

## *Right to Know Request*

We have carefully considered this request, and believe it to be a quite reasonable given the fact that the vast majority of the information requested has already be retrieved, reviewed, and or separately cataloged and filed by the City and its agents in the following contexts: 1) By Sergeant John Massi in preparation for what we believe to be perjured testimony before the Licenses and Inspection & Review Board on June 2, 2009, the numerous meetings he attended with my clients and other officials of the City, his visits to Fiso Lounge, and any input he had in the most recent denial of my clients application for license renewal; 2) by Captain Tony Washington during his involvement in the events concerning Fiso Lounge, and specifically his October 19, 2009 denial of Fiso's application for renewal of his Special Amusement License; 3) by the City's Nuisance Task Force, the Philadelphia Police Department, and/or the Department of Licenses and Inspection in the same context; and 4) by the City of Philadelphia Law Department in it preparation for the various meetings concerning my clients and/or a June 2, 2009 hearing before the L & I Review Board.

The reasonableness of this request is also supported by the fact that any complete and professionally done investigation of the claims made by my clients as the City conducts its investigation of this matter, will of necessity require that any documents that have not already been retrieved and reviewed, be pulled for a complete review. We are also convinced that these documents would necessarily have to be complied and reviewed by the Law Department in anticipation of litigation as a result of this letter and a proper defense of the City's legal interests in light of what would have to be produced pursuant to the relevant federal or state rules of civil procedure. [2]

---

[2] My clients have not made a final decision on whether ligation will be initiated against the City on account of the events complained of.

4

We would also note for the record that the records requested, with some exceptions, relate to the public comments under oath of Sergeant John Massi, and/or other agents of the City.

Our requests are as follows:

## *Training, regulation, and direction of City Employees*

The City Charter, § 5-1004. Right of Entry provides that:

"*Subject to the limitations of the Constitutions of the United States and of the Commonwealth of Pennsylvania, any officer or employee of the Department of Licenses and Inspections, in the performance of his duties, may at any reasonable hour, without hindrance, enter, examine and inspect all vessels, vehicles, premises, grounds, structures, buildings, and underground passages of every sort, including their contents and occupancies, and may likewise examine, inspect and test any substance, article, equipment or other property* (emphasis added)."

The City Code, § 9-703(4) (A) states that:

"*All special assembly occupancies shall be subject to inspection by the Philadelphia Police Department or the Department of Licenses and Inspections at all reasonable times and whenever such place is open for business.*"

The City Code, § 9-703 (2)(b)(.4)(.c) requires that the Department of Licenses and Inspections take into account "*the views of the Police Department*" in determining whether to issue a Special Assembly License.

As such, we would request:

### Police Department

1. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on who in the Police Department is officially authorized to bind the Department in legal matters;

2. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees (especially District captains) concerning the standards to be applied when under the City Code they are required to express "the views of the Police Department" in connection with an application for a Special Assembly License so that Constitutional and other legal violations do not occur;

3. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on the manner of their conduct during "raids" or inspections of bars and lounges such as

5

Fiso Lounge. Especially when the raid or inspection is conducted on a night when the establishment is open and filled with patrons who are obviously there to drink and have been doing so.;

4. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on the legal or other criteria to be used when recommending or requesting that any governmental entity, including but not limited to the City's Department of Licenses and Inspections, close, raid, or search ('inspect") a particular business, bar lounge, or other commercial establishment;

5. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on their duties under the Constitution of the Commonwealth of Pennsylvania and/or the Constitution of the United States, which limit their power and/or conduct under the City Charter, and/or in relation to the Constitutional rights of persons or establishments which they inspect or "raid", or persons they temporarily detain, or order to move out of a premises, and/or their conduct when there are part of raids, inspections, and searches of establishments generally, or as part of the Nuisance Task Force;

6. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on "estimating" the number of patrons present in a premises with an occupancy limit during inspections and/or "raids";

7. The written regulations, police and/or directives of the Philadelphia Police Department that govern the requirements of a sergeant with the duties of Sergeant Massi, in effect from 2007 to the present, that govern his responsibilities to document his encounters and issues with persons or entities such as Fiso Lounge or Frank Funaro, and/or his daily activities in generally;

8. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees, that concerning the wearing of plain clothes while on duty;

9. The written regulation, policy, or polices of the Philadelphia Police Department, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on the proper execution of Consent Searches.

Department of Licenses and Inspection

1. The written regulation, policy, or polices of the Department of Licenses and Inspection, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its

employees on the manner of their enforcement of the City's Nuisance laws as they relate bars or lounges such as Fiso Lounge;

2. The written regulation, policy, or polices of the Department of Licenses and Inspection, in effect for the past 5 years, that regulate; control, direct, and/or are used *to train* its employees on the manner of their conduct during "raids" or inspections of bars and lounges such as Fiso. Especially when the raid or inspection is conducted on a night when the establishment is open and filled with patrons who are obviously there to drink and have been doing so;

3. The written regulation, policy, or polices of the Department of Licenses and Inspection, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on their duties under the Constitution of the Commonwealth of Pennsylvania and/or the Constitution of the United States, which limit their power and/or conduct under the City Charter, and/or in relation to the Constitutional rights of persons or establishments which they inspect or "raid", or persons they temporarily detain, or order to move out of a premises;

4. The written regulation, policy, or polices of the Department of Licenses and Inspection, in effect for the past 5 years, that regulate, control, direct, and/or are used *to train* its employees on "estimating" the number of patrons present in a premises with an occupancy limit during inspections and/or "raids";

*Allegations and statements made under oath during the June 2, 2009 Hearing before the L & I Review Board*

1. Documents that indicate the names, badge numbers, and current assignments, of the 4 officers allegedly "injured" in the 5/03/09 incident in the parking lot east of Fiso Lounge;

2. The medical records and/or any other records that demonstrate specifically that as of June 2, 2009, as a result of the 5/03/09 incident, *"four police officers were injured, three of whom are still injured and have not returned to work.... one of them broke their femur bone."*;

3. The names, address, and copies of the *signed* statements or emails of those individuals that Counsel for the City was referring to when he said " ... *I'm going to have about 20 witnesses but I am going to condense it to two.*";

4. All documents (74/48s, 75/49s, patrol logs, emails, memorandums, arrest reports subpoenas to testify in criminal court, and the like) that substantiate the dates, times, names of defendants, relevant criminal charges, officers involved, and the substance of Sergeant Massi's statement that: *"I personally responded to the club during the highway fights or receiving phone calls from the owners and his staff requesting police presence due to overcrowding and fights out there... [t]roughout the summer of '07 I've had numerous conversations with the owner and with security staff and bouncers at the door indicating that overcrowding is an issue with Police Department. The intoxicated people*

7

*coming out of the bar, the highway fights in the earlier morning hours. That went on throughout the summer of '07 and into '08";*

5.  All documents (74/48s – 75/49s/ patrol logs, emails, memorandums, arrest reports subpoenas to testify in criminal court, and the like) that substantiate the dates, times, names of defendants, relevant criminal charges, officers involved, and the substance of Sergeant Massi's statement that: *In the past year and a half approximately 45 arrests. Most of them were for disorderly conduct or the patrons were intoxicated and refused to leave."*

6.  All documents (74/48s – 75/49s/ patrol logs, emails, memorandums, arrest reports subpoenas to testify in criminal court, and the like) that substantiate the dates, times, names of defendants,, relevant criminal charges,  officers involved, to show the number of Fiso staff arrested based on Sergeant Massi's statement that: *"We had to hinder his staff from interfering with the arrests.";*

7.  All documents that indicate the names, addresses, dates and times of meetings or conversations, and the subjects of said meetings as they relate to Sergeant Massi's statement that: *" I coordinate with many civic groups within the 17th District. I have the Sosmen South of the South Neighbor Association. I have Town Watch and the South Street Business Association West, I met with the heads of each group";*

8.  All documents, including emails that indicate the names, addresses, dates, times, and substances of the complaints cited by the City, when Counsel for the City stated: *"...there is a half a dozen people that remarked about how it effects them. There are other people who vocalize their displeasure but they didn't write anything."*

9.  Documents that list the names and addresses of all the bars or lounges in the 17th police district, and/or that relate to any other location in the 17th District that support Sergeant Massi's statement that: *"In my experience in the past three and a half years, I have no other location that received the amount of radio calls or police resources that this location does.";*

10. Documents that indicate the number of times, in the past three years that Sergeant Massi worked plain clothes in the 17th Police District;

11. Documents that indicate the days Sergeant Massi was off of work because of sickness, vacation, and/or any other reason from 2006 to the present;

12. All documents that evidence the shifts Sergeant Massi worked from 2006 to the present;

13. All documents (74/48s – 75/49s/ patrol logs, emails, memorandums, arrest reports subpoenas to testify in criminal court, and the like), that contain the names, badge numbers and assignments of police officers, and/or the names and addresses of the citizens who allegedly generated the 151 calls at or near Fiso referred to in the hearing

8

that: *"were specifically initiated by an officer or a complainant call[ing] 911 for that address."*

14. At the June 2, 2009 hearing Sergeant Massi indicated that one of the violations that was a repeated concern at Fiso Lounge was underage drinking. We would request all documents (74/48s – 75/49s/ patrol logs, emails, memorandums, arrest reports subpoenas to testify in criminal court, and the like) that substantiate the dates, times, names of defendants,, relevant criminal charges,  and officers involved, for all arrests or investigations for underage drinking at Fiso Lounge for the last three years.

## Miscellaneous Requests for the City of Philadelphia

1. The written regulations, polices, and/or other documents that govern and/or are used to train members of the City's Nuisance Task Force in regard to the Constitutional imitations on its powers to enforce the City Nuisance laws, especially as the relate to searches and raids on businesses in the City of Philadelphia, and/or document the roles each agency of the City is responsible for in the Task Force;

2. Documents to evidence the addresses, owners names, and other relevant information for each and every establishment raided or inspected by the City's Nuisance Task Force in the last three years;

3. All search warrants issued for the establishments raided. and or inspected, by the City's Nuisance Task Force in the last three years;

4. Documents to evidence the addresses, owners names, and other relevant information for each and every establishment raided or inspected by the City' Nuisance Task Force in the last three years wherein Dominic Verdi, or Sergeant John Massi participated in anyway;

5. Copies of all citizen or legal complaints received by the City of Philadelphia in the last 5 years concerning the conduct of the City's Nuisance Task Force;

6. Documents to evidence all discipline concerning, and/or citizen complaints filed against. Captain Tony Washington, Sergeant John Massi, or Dominic Verdi, in the last 3 years;

7. All emails concerning Fiso Lounge and/or Frank Funaro in the last three years;

8. Documents to evidence the names, badge numbers, and current assignment of all the police officers who worked the Fiso Lounge detail that was paid for by Fiso Lounge;

9. The dates, hours worked, and/or arrests reports, 75/48s, patrol logs, or any other documents generated by all officers who worked the Fiso Lounge detail that was paid for by Fiso Lounge;

9

10. All documents reviewed by Captain Washington before he objected to Fiso Lounge's application for a Special Amusement License, and the date and time she reviewed said documents;

11. The written polices, regulations and/or guidelines used by Captain Washington in evaluating his response to Fiso Lounge's application for a Special Amusement License;

12. All documents evidencing the addresses, names of owners, for all establishments in the 17th District wherein Captain Washington has expressed approval, or disapproval, of a Special Amusement License since his promotion to captain (irrespective of the Districts he may have served in);

13. All documents evidencing the addresses and the names of the owners of all establishments in the City of Philadelphia wherein an employee of the Philadelphia Police Department has expressed *the views of the Police Department*" in connection with the Department of Licenses and Inspection determining whether to issue a Special Assembly License, in the past three years;

14. All documents evidencing the dates training was received by, and the content of any training, for all members of the City's Nuisance Task Force, and/or Dominic Verdi, Captain Tony Washington, and Sergeant John Massi, in the last five years, concerning: the Nuisance Ordinances of the City of Philadelphia; the Constitutional issues involved in enforcing the City Nuisance Regulations; and the related legal and Constitutional issues surrounding the granting and revoking of various business licenses in the City of Philadelphia;

15. The official Records Retention Policy for the City of Philadelphia, the Philadelphia Police Department, the City of Philadelphia Law Department, and/or the City's Department of Licenses and Inspections in effect for the last three years;

16. The official Records Retention Policy as it related to emails for the City of Philadelphia, the Philadelphia Police Department, the City of Philadelphia Law Department, and/or the City's Department of Licenses and Inspections in effect for the last three years.

I look forward to working with the City to make the production of this information as seamless as possible, and will be submitting more specific information on the general allegations made in this letter in the coming days. I am available as indicated above if there are any questions, comments, or concerns as we move forward with these matters.

Very truly yours,

Leon A. King II, Esq.

Cc:    Mr. Frank Funaro, Fiso Lounge
       Clarence Armbrister, Chief of Staff, Office of the Mayor
       Camille Barnett, Managing Director, City of Philadelphia
       Charles Ramsey, Police Commissioner, City of Philadelphia
       Bridget Greenwald, Deputy Commissioner, Licenses and Inspection, City of Philadelphia
       Pat Giorgio-Fox, Deputy Commissioner, Police Department
       Richard Ross, Deputy Commissioner, Police Department
       Kevin Bethel, Deputy Commissioner, Police Department
       Elizabeth Mattioni Esq., Litigation Chair, Law Department
       Andrew S. Ross, Chief Deputy City Solicitor, Law Department
       J. Shane Creamer, Jr., Esq., Executive Director, City of Philadelphia, Board of Ethics
       William W. Johnson, Executive Director, Police Advisory Commission
       Folasade Olanipekun Lewis, Esq., Deputy Commerce Director
       Christopher Difusco, Esq., City of Philadelphia Law Department
       Tony Washington, Captain, 17th Police District, City of Philadelphia
       Michael Dwyer, Lieutenant, Philadelphia Police Department
       John Massi, Sergeant, 17th Police District, City of Philadelphia
       Dominic Verdi, Department of Licenses and Inspection, City of Philadelphia

11

Exhibit D

Plaintiffs' Correspondence to City of November 13, 2009

# LEON A. KING, II

**ATTORNEY AT LAW**

610-724-8967

240 East Roumfort Road
Philadelphia, PA  19119

Email: Philaking@aol.com

Web Site: www.leonking.org

November 13, 2009

**via Fax & U.S. Mail**

Mr. Everett Gillison, Esq.
Deputy Mayor, Public Safety
City of Philadelphia
1401 J.F.K. Blvd.
14th Floor
Philadelphia, PA, 19102

Mayor Michael Nutter
City of Philadelphia
City Hall
Philadelphia, PA, 19107

Mr. Craig Straw, Esq.
Chief Deputy City Solicitor
City of Philadelphia
Law Department- Civil Rights Unit
1515 Arch Street
14th Floor
Philadelphia, PA, 1902

Charles Ramsey
Police Commissioner
Philadelphia Police Department
One Franklin Square
Philadelphia, PA 19106

**Re:   Philadelphia Police Retaliation and Intimidation - In Re: Fiso Lounge and Mr. Frank Funaro**

Dear Mayor Nutter, Commissioner Ramsey, and Messrs: Gillison and Straw,

As I hope you will recall, On November 2, I served a request for investigation and a "Right to Know" request on the City of Philadelphia, concerning abuse, illegal conduct, and/or perjury on the part of Captain Tony Washington and Sergeant John Massi of the 17th Police District, and other City employees. In that letter I specifically outlined my clients' fear of retaliation by the Police Department and/or the Department of Licenses and Inspection as a result of this constitutionally protected activity. I also requested that the City take steps to guard against this outcome. That correspondence was also delivered to, and received by, Captain Tony Washington, and Sergeant John Massi of the 17th Police District.

As I outlined to Mr. Straw on the telephone on November 9, 2008, *it would appear that personnel of the 17th Police District have responded with what appears to be an effort to intimidate and retaliate against my clients.*

Specifically, on Thursday November 5 a limousine dropped customers off in front of the Fiso Lounge, and thereafter a police officer we believe has the last name Bail, who was 2 vehicles behind the limousine, pulled over the limousine and issued a ticket to the driver. On Friday November 6, security noticed police vehicles throughout the night, driving by Fiso Lounge and

1

looking into the nightclub and it appeared they were specifically trying to observe what sort of activity was going on in the Club. Staff at Fiso also noticed police vehicles on 15th and South and Broad and South on 2-3 occasions through the night for approximately 30-45 minutes each time. On Saturday night the police presence continued as it did the previous night.

I must be clear that my client does not want "special" treatment by the Police Department, or any other Department of the City. All he desires is that all City departments act within the law, and that he is not singled out for intimidation by the Police Department simply because he has exercised his constitutional right to complain about the conduct of City actors.

Sergeant Massi of the 17th Police District has specifically threatened to ruin Mr. Funaro's business one more than one occasion in the past. When combined with the fact that a letter of complaint was served on Sergeant Massi, Captain Washington, and others on November 2nd, the fact that an increased police presence began 3 days later, and the fact that police presence of this nature has not been observed by staff since late in the spring, these actions by the City are extremely troubling.

As Mr. Straw can explain, intimidating or retaliating against Mr. Funaro and his business because of his letter of complaint, or conspiring to do so, is unconstitutional and illegal, and in some instances can be prosecuted criminally. I again request that the City do all it can to avoid this type of behavior, and hope that it all turns out to be just a coincidence. On behalf of my clients I also specifically request that Commissioner Burns be instructed to look into whether this increased police activity is being coordinated or influenced by employees of the Department of Licenses and Inspection. As we all know the law applies to these employees as well.

My clients will of course include this incident in their supplemental statement of particulars in connection with their November 2nd request for an investigation. I will also be submitting a supplemental Right to Know Request on these incidents.

Very truly yours,

Leon A. King II, Esq.

Cc:    Mr. Frank Funaro, Fiso Lounge
       Clarence Armbrister, Chief of Staff, Office of the Mayor
       Camille Barnett, Managing Director, City of Philadelphia
       Fran Burns, Commissioner, Department of Licenses and Inspection.
       Richard Ross, Deputy Commissioner, Police Department
       Elizabeth Mattioni Esq., Litigation Chair, Law Department
       J. Shane Creamer, Jr., Esq., Executive Director, City of Philadelphia, Board of Ethics
       Lt. Francis Healy, Esq., Special Assistant to the Police Commissioner
       Tony Washington, Captain, 17th Police District, City of Philadelphia
       John Massi, Sergeant, 17th Police District, City of Philadelphia

2

Exhibit E

Plaintiffs' Correspondence to City of February 3, 2010

# LEON A. KING, II                    **ATTORNEY AT LAW**

---

**610-724-8967**                          **240 East Roumfort Road**
                                          **Philadelphia, PA  19119**

Email: Philaking@aol.com              Web Site: www.leonking.org

February 3, 2010                      **Via Email and U.S. Mail**

Mr. Craig Straw, Esq. - Chief Deputy City Solicitor
City of Philadelphia Law Department- Civil Rights Unit
1515 Arch Street 14th Floor
Philadelphia, PA, 19102

**Re:    Fiso Lounge and Mr. Frank Funaro-Nuisance Task Force-Specific Allegations**

Dear  Mr. Straw,

I trust all is well.

Based on our last conversation concerning my client, it was agreed between us that all further correspondence concerning his request for an official investigation into the illegal activity occurring at his place of business be directed to you. It is my further understanding that you will make sure that the persons designed by the City to investigate matters such as these, will receive this information and continue with their investigation.

I would request that the City not confine the investigation of these allegations solely to the Police Department. As you well know, the activities of the Nuisance Task Force involve the Police Department, the Department of Licenses and Inspection, the Law Department, and the District Attorney's Office. Treating the investigation as one directed at particular officers only, misses the point. My client and I are reporting these things to the City so that a serious change is made in the operations of the Nuisance Task Force, so that a clear legal policy is developed, and so that employees who are knowingly violating the law are punished. The Nuisance Task Force cannot continue to misuse the legal authority that is granted to the City to conduct administrative inspections. As it stands now, the Nuisance Task Force has been abusing that authority in a way that is specifically designed to drive unfavored business owners out of business through strong arm, Gestapo like displays of force, false arrests, and other arbitrary behavior. **From what I can tell the abuse is long standing and widespread affecting many business owners in the City.**

## Specific Allegations against Sergeant John Massi, Captain Tony Washington, Dominic Verdi, and other unknown agents of the City of Philadelphia

1.  In 2006 Fiso Lounge received a letter from the 17th Police District to come to  a meeting the purpose of which was to make all the bars in the area safer and more community friendly. As recalled by my client, 4 establishments received this invitation and 2 of the 4 showed up at the meeting. Captain Gillespie and other City officials were present at this

1

meeting. Business cards were exchanged, and City officials complimented Mr. Funaro and his operation. City officials also had advice and suggestions for the two businesses present on ways to improve their operations to be more community friendly. At this meeting Sergeant John Massi was the only participant who was belligerent and made false accusations against Fiso Lounge saying falsely that there was drug activity, gang activity, sex inside the facility, and violence;

2.  Sometime in 2008, at the suggestion of the City of Philadelphia, Fiso Lounge hired a police detail;

3.  After a period of a good working relationship with the police detail Fiso Lounge began to get the same two officers working overtime. These officers were rude and arrogant to customers; did not want to get out of their car when requested by Fiso staff; complained about how they did not want to be there; left before their shift was done; told security staff that it did not matter because Fiso Lounge would be shut down soon; and advised staff to look for new jobs;

4.  During this time staff at Fiso Lounge were told by other officers in the 17th District that the officers Fiso had been getting on a regular basis were sent to spy on Fiso Lounge by Sergeant Massi, were specifically told not to help Fiso Lounge in anyway, and told to write tickets against patrons once they left the Club for any violation they saw. These non- detail officers also told Fiso staff that the reason Fiso Lounge was having problems was because a $5000.00 payment had not been made to the police;

5.  On May 3, 2009 after some 20 minutes after closing, there was an incident with police in a parking lot adjoining Fiso Lounge. At that time a lieutenant present on the scene threatened that L & I would be called and Fiso Lounge would be shut down;

6.  On May 10, 2009, officials of the City of Philadelphia, including the Philadelphia Police Department (the Nuisance Task Force) executed an illegal search and seizure of Fiso Lounge without the consent of the owner Mr. Frank Funaro. During this illegal search, Philadelphia Police acted in an aggressive and illegal manner, banged nightsticks on tables, were aggressive with customers, told customers to "get the fuck out", turned up the lights, and turned off the music. This "raid" resulted in City officials finding some wires that were not up to Code, and the false allegation was made that the fire alarm at Fiso Lounge was inoperable. A representative of the Department of Licenses and Inspection shut Fiso Lounge down. Fiso Lounge re-opened on May 12, 2009 after correcting the wiring problem, and demonstrating to City officials that their diagnosis of the fire alarm was incorrect;

7. On or about May 16, 2009, Fiso security staff asked a patron who as acting inappropriately in the Club to leave. This patron exited the club to retrieve his car on Broad Street. When he found that his car had been towed, he returned to Fiso in an agitated state. He was part of a birthday party that was being held at the Fiso that night, and proceeded to summon his family members out of the Club via cell phone. 6 or 7 members of his family exited the Club and this patron continued to act in an unruly manner and refused to leave the area after being asked to do so several times by Fiso Staff. Mr. Funaro joined his staff in trying to calm this situation down and have this patron leave the area. During this process an employee of the Jamaican Jerk Hut across the Street, yelled across the street to the patron who was causing the scene. As a result the patron ran across the street and began a physical altercation with this individual. Mr. Funaro and his security staff crossed the street in an attempt to stop this altercation when a passing police officer stopped in the middle of the street, got out of their car and intervened. Soon other officers arrived who also blocked the street. While there was a number of people in the that might arguably be called a "crowd", the Police Department, Sergeant Massi, and other employees of the City of Philadelphia, falsely (or at best negligently) alleged that the crowd in the street were patrons of Fiso Lounge and on that basis theorized that Fiso was overcrowded. At no time during this event was Fiso overcrowded, and at no time did patrons empty into the streets to be part of this event. Any "crowd" as it were consisted of the patron, his family. Fiso security, the congestion caused by police vehicles parked in the middle of the street, and passersby. At no time was Mr. Funaro involved in fight as alleged by Sergeant Massi, no witness stepped forward to support this allegation, nor was he accused by anyone on the scene of being involved in a fight or physical altercation. This entire incident occurred in the rain, which would account for Mr. Funaro's disheveled hair that may have been observed by Sergeant Massi;

8. On or about May 17, 2009, at approximately 45 minutes after the Jerk Hut incident, Sergeant Massi approached Frank Funaro, Gary Pacitti, Gavan McCal, T.Y. Mews, and Maurice Hollman in plain clothes. He stated specifically that he wanted everyone present to hear what he had to say. He went on to state that everyone should look for new jobs because Fiso Lounge was going to be shut down, that he had a personal vendetta against Frank Funaro and was going to run him out of South Philadelphia. He further stated that if any of his officers were hurt in incidents connected to Fiso Lounge that he would personally travel to Frank Funaro's home and arrest him;

9. On May 17, 2009, Sergeant Massi contacted the Department of Licenses and Inspection and based on his false accusations asked the Department to shut Fiso Lounge down, it was shut down by order of the City as of 5:00 on May 21, 2009;

10. On May 22, 2009 officials of the City (Nuisance Task Force) arrive at Fiso Lounge while it was closed and falsely stated that a man was spotted outside Fiso Lounge with a gun, and further falsely indicated that Fiso Lounge was open despite the May 21 order from the City.  They demanded to inspect Fiso Lounge and where illegally allowed to do so in violation of Police Department Directives and City ordinances;

11. During the period between May 22, 2009 and June 2, 2009, Sergeant John Massi spread knowingly false facts concerning Fiso Lounge and Frank Funaro by meeting and otherwise communicating with neighborhood groups and/or specific neighbors repeating his false accusations against Fiso Lounge. He was able to get some neighbors who had no knowledge of the operations of Fiso Lounge (other than what they had been told by Sergeant Massi), to send in false statements in support of Fiso Lounge being shut down by the City. These false statements where presented at the later hearing before the L & I Review Board and mailed to various politicians;

12. During this period Frank Funaro had contact with "Pete" the owner of Level Room, to discuss Nuisance Task Force abuses. During this conversation Mr. Funaro was told that the way to get the City off his back was to follow the action he was advised to take and thereafter took. Specifically, Mr. Funaro was told he should buy some of his beer from Chappy's located at 2825 S. 17th Street which was owned by Dominic Verdi and/or his wife; this would stop any visits from L & I. "Pete" told Mr. Funaro further that all he had to do was call Mr. Verdi's partner, Greg Quigley, to set this "fix" to the situation into play. A phone number was provided for Mr. Quigley.

13. On June 2, 2009 after a hearing before the L & I Review Board, Fiso was allowed to re-open;

14. During the hearing before the L & I Review Board, Sergeant John Massi, under oath lied, falsely exaggerated, or intentionally twisted the facts in a false light the as follows: 1) that 151 radio calls were made to Police concerning activities connected to Fiso Lounge; 2) that after the police detail was hired things got worse at Fiso Lounge; 3) that calls of disturbances at Fiso Lounge were so numerous that on many occasions he did not have any police to patrol the rest of the 17th District; 4) that underage drinking was a problem or issue at Fiso Lounge; 5) that officers were hospitalized and that one officer broke his femur bone, as the result of an incident on May 3, 2009; 6) that cameras at Fiso Lounge were not working; 7) that he observed the owner, Frank Funaro, with a scratched face, and that it appeared he had been in a fight; 8) that neighbors had been complaining to him about Fiso Lounge; 9) that he did not threaten Frank Funaro as described above; 10) that no one asked him or copies of the documents concerning Fiso Lounge prior to the June 2,

2009 hearing;[1] and 11) that 45 arrests had been effectuated on 45 different occasions at Fiso Lounge, and/or in connected to activities at Fiso Lounge;

15. Officials of the Law Department, the Police Department, the District Attorney's Office and the Department of Licenses and Inspection were negligent in their investigation of Sergeant Massi's false allegations, and as a result mis-lead many other City officials including the L & I Review Board. For example, a close review of the documentation submitted regarding the alleged 151 radio calls at the June 2, 2009 hearing reveals that *at least* 144 of the documented entries should have been excluded because no one bothered to closely review the documents. Many excluding factors were purposely not considered For example: 1) the very suspicious 56 calls, with 56 different D.C. Numbers issued for pedestrian investigations, in a 6 minute period on September 12, 2008; 2) calls that came in well after the 2:00 AM nightly closing time for Fiso; 3) calls regarding a fire alarm, hospital case, and a motor accident; 4) calls that came in during times of the day, or on specific days, when the club was clearly closed; and 5) multiple calls for one incident;

16. On June 11, despite the fact that the L & I Review Board had reviewed the false allegations made by the City and Sergeant Massi, and rejected them, Sergeant Massi again appeared at Fiso Lounge. Acting in a completely unprofessional manner he demanded to enter the building to see records on the number of patrons inside of Fiso and then disputed what he was told. He again threatened Frank Funaro and told him that L & I was on standby to shut his business down;

17. On June 17, 2009, the City of Philadelphia, including its Police Department, again conducted an unlawful search and seizure of Frank Funaro and Fiso Lounge that was not consented to by its owner Frank Funaro. This was despite the hearing on June 2, 2009, that found no violations of law in Fiso's operation. In excess of 12 heavily armed aggressive officers acted in an unlawful manner by doing such things as: 1) assaulting the D.J; 2) turning the music off, and the lights up; 2) strolling about the premises in an effort to intimidate the patrons into leaving; 3) unlawfully stopping at least one patron and using excessive and unnecessary force to arrest this individual; 4) releasing tear gas in this patron's face after he was on the floor and handcuffed, causing Fiso Lounge to empty out further as the tear gas spread through the facility (reports were also received

---

[1] On or about May 12, 2009 a meeting (not a hearing) was held with City officials, Mr. Funaro, and his attorney Barry Goldstein. At this hearing Mr. Goldstein requested records from Sergeant Massi to substantiate the false claims being made by Sergeant Massi. Mr. Goldstein also subsequently made the same request to the City Law Department in advance of the June 2, 2009 hearing. No documents were produced until the June 2nd hearing began. When attorneys for Mr. Funaro protested, the City attorney Mr. Edward Jefferson indicated that he did not have the documents to provide any sooner because Sergeant Massi was on vacation. This was despite the fact that in the days prior to the hearing, Sergeant Massi was busy communicating with individuals in the neighborhood, spreading his lies, and trying to get these folks to testify at the hearing or write letters. We have a copy of one email sent by Sergeant Massi in this regard.

5

about police personal spraying tear gas on the second floor of the building); 5) causing one patron to have an asthma attack as a result of the tear gas; 6) failing to immediately treat the patron who had the asthma attack; 7) illegally confiscating the cell phones of more than one patron who were filming these events; 8) grabbing the cell phone of another patron who was filming the illegal activity and erasing the footage; and 9) falsely arresting one patron. Finding no Code violations, the City officials left and said " you can re-open now" which was a moot point since they had cleared out the premises due to their illegal behavior;

18. Mr. Funaro has video footage of the events that occurred on June 17, 2009;

19. The charges against the patron illegally arrested that night were dismissed;

20. On November, 2, 2009 Mr. Funaro served the City with a letter of complaint regarding the abuse of the Nuisance Task Force which was served on Captain Washington and Sergeant Massi. We believe that in retaliation for that complaint Sergeant Massi, Captain Washington, and/or other employees of the City of Philadelphia caused the 17th District send personnel to try to intimidate Mr. Funaro by increasing police presence at or near Fiso Lounge. This action ceased after my letter of complaint dated November 13, 2009;

21. During the course of these events, Captain Tony Washington has acted unprofessionally and failed to properly investigate complaints brought to him by Mr. Funaro. Specifically: 1) Mr. Funaro's attempts to develop a better relationship between the 17th and Fiso Lounge were rebuffed. For example, a call from the Council President Verna's Office on Mr. Funaro's behalf to the 17th District Captain was not returned; 2) Mr. Funaro called Captain Washington during the pendency of these incidents to complaint to Captain Washington and he did nothing; 3) on June 4th a specific call was made to Captain Washington, he had a negative reaction and hung up the phone; 5) an email sent by Mr. Funaro on these subjects has still not been responded to;

22. Thereafter, Fiso Lounge's application for renewal of its Special Assembly license was denied By Captain Tony Washington in violation of Police Department regulations, and in violation of the law. This was despite the fact that all other parties required to consent to the renewal had approved the application.

I trust that the City will take these allegations seriously and correct these abuses. If any further information or contact with my client is required for the City's investigation, please do not contact him directly. Rather, please have City officials contact him through my office.

Finally, it should be no surprise that Mr. Funaro expects the City to make him whole in light of the damages he has suffered as a result of the activity described above. Therefore, you should expect a demand letter, and a filing in federal court very shortly. I would note that during my investigation of these allegations, it has been told to me that a 911 call was placed during the

June 17, 2009 raid on Fiso by a patron who complained during his call about the behavior of City officials that night. I trust the City will endeavor to preserve evidence of that call, and all evidence that might become discoverable in the upcoming lawsuit.

Thanks for your attention, and please feel free to contact me if you have any questions, comments, or concerns.

Very truly yours,


Leon A. King II, Esq.

Cc:     Mr. Frank Funaro, Fiso Lounge
        Camille Barnett, Managing Director
        Amy Kurland, Inspector General
        Everett Gillison, Deputy Mayor for Public Safety
        Fran Burns, Commissioner, Department of Licenses and Inspection
        Charles Ramsey, Police Commissioner
        Elizabeth Mattioni, Litigation Chair

Exhibit F

Plaintiffs' Correspondence to City of July 17, 2010

# LEON A. KING, II                    ATTORNEY AT LAW

610-724-8967                                   240 East Roumfort Road
                                               Philadelphia, PA  19119

Email: Philaking@aol.com                       Web Site: www.leonking.org

April 8, 2010                                  **Via Email and U.S. Mail**

Mr. Craig Straw, Esq. - Chief Deputy City Solicitor
City of Philadelphia Law Department- Civil Rights Unit
1515 Arch Street 14th Floor
Philadelphia, PA, 19102

**Re:**  **Fiso Lounge and Mr. Frank Funaro-$411,989.00 Demand for Settlement**

Dear  Mr. Straw,

 I trust all is well.

 I am writing on behalf of my clients, Frank Funaro and Lexie, JA, Incorporated, d/b/a as Fiso Lounge to demand $411,989.00 to settle all legal claims my clients have against the City and/or County of Philadelphia, and it various employees and agents. This amount reflects the loss of revenue caused by the City's illegal acts, and the related attorney fess incurred by my clients in retaining attorney to represent them before the L & I Review Board, the attorney's fees related to my representation, damage to their professional reputation, and related expenses (see attachment). My clients' desire is to amicably settle this matter and as a sign of good faith have not included in this demand lost revenue after December of 2009 which continues to rise each week, and will be part of any demand made if they are forced to initiate a lawsuit. Of course, you should also be aware that the legal fees related to my representation will continue to rise at the rate of $375.00 per hour, and will be added to the hourly rates of the attorneys 1 will be bringing on board to assist me if we are forced to initiate a lawsuit.

 I must say at the outset that my clients are extremely disappointed in the City's response to their request for investigation into the illegal and criminal conduct we believe has gone on in this case. It has been well over 5 months since we first brought these issues to the City's attention and to date no City official has reached out through me to my clients in an effort to investigate this matter. The only response outside those connected to our Right to Know Request have been: 1) a letter from the Ethics Board indicating that despite our allegations of possible kickbacks and extortion in this case that it found no allegations related to "any violations of the City's public integrity laws"; 2) a retaliatory police presence at my clients' place of business immediately after our letter of November 2, 2009; and 3) a lawsuit filed by the City against my client to re-coup

1

fees for police officers hired by my clients, at the City's direction, whose illegal and unprofessional conduct was partly the subject of their request for investigation. [1]

As you know, I have outlined the specific illegal and unconstitutional actions of the City in previous correspondence, thus I will not repeat them here. I will however, attempt to outline some of the legal theories and facts the City should consider in evaluating this claim.

My clients' Constitutional rights have been violated by the City of Philadelphia its agents and employees based on several specific instances:1) an illegal and unconstitutional "raid" in their place of business by the Nuisance Task force on May 10, 2009 and the related cease operations order; 2) an illegal and unconstitutional cease operations order based on intentional falsehoods and later perjury; 3) a retaliatory and unconstitutional "raid" on their place of business on July 17, 2009; and 4) the illegal, unconstitutional, and retaliatory denial of my clients' request to renew their Special Assembly License; and 5) retaliation against my clients' for reporting these incidents to the City in November of 2009.

By way of background, my clients have operated their business in the 1400 block of South Street for 6 plus years. During the majority of that time they had a very productive and close working relationship with the City of Philadelphia and the 17th Police District. My clients exercised due diligence in improving the safety and security of their operations over the years, both independently, and in consultation with the City. For example my clients have; 1) installed security cameras throughout the premises; 2) purchased a license reader to enhance their ability to catch under age drinkers; 3) hired Act 235 security staff to patrol all areas of the club, the surround parking lots, and streets; 4) at the City's request hired and paid for City police officers to patrol the premises; 5) changed the manner in which patrons exit the premises as a result of suggestions made by the City; and 6) posted sings throughout the establishment concerning cameras and the rules of the business.

Additionally, despite regular undercover inspections by the Pennsylvania Liquor Control Board (which generate written reports to my clients) my clients have never been cited for any violations of state liquor laws, most notably those related to under age drinking, prostitution, drug use, and/or the presence of other undesirable persons and the like.

My clients' close working relationship with the City changed after an incident outside the business on May 3, 2009 when an argument between a couple after closing in the parking lot, escalated to a situation where the one of these patrons allegedly assaulted a police officer. Sergeant John Massi and Captain Craig Washington of the 17th Police District blamed my clients' for this event, and thereafter in retaliation for this assault on police engaged in a

---

[1] See, City of Philadelphia v. Lexie, J.A. Inc., Phila., CCP, Jan 2010 Term, No. 002921, which was withdrawn by the City at my request after I explained the circumstances surrounding this matter.

conspiracy with other City officials which resulted in the violation of my clients' constitutional rights. The specific intent of this conspiracy was to close my clients' business down by any means necessary. These violations were allowed to occur as a direct result of the policies of the City of Philadelphia.

The municipal ordinances which the City relies upon to conduct the raids on my clients' business on their face do not provide the Police Department, and/or the Department of Licenses and Inspection, enough guidance on the Constitutional limits of their authority when acting as part of the City's Nuisance Taskforce. or in regulating bars and taverns in the City of Philadelphia. (See: § 9-703 of the Philadelphia Code – Special Assembly Occupancies & § 5-1004 of the Philadelphia Home Rule Charter – Right of Entry) It is clear from the City's responses to my client's Right to Know Requests that neither the Police Department or the Department of Licenses and Inspection receive **ANY** training in this area. [2]

The City's ordinances inject police officers into situations which are based on the City's authority to conduct "administrative inspections" with absolutely no guidance or training on the limits of their authority during said inspections. Thus they believe that when they accompany the Department of Licenses and Inspections to look for City code violations. they have the authority to assault the staff of my clients' establishment, release tear gas in the premises, and/or present themselves with a level of force that is clearly constitutionally unreasonable and serves no purpose but to intimidate. They act as though they are executing a criminal search warrant. which is illegal and unconstitutional. The City's policy also places police personal in the position of determining  what constitutes a nuisance bar worthy of a "raid". and what incidents at or near a tavern or bar can be legally attributed to the owners of these establishments, *all with no training on these subjects.* The same conditions exist for the employees of the Department of Licenses and Inspection. These conditions lead to the arbitrary and unreasonable exercise of government power and resources, which the Constitution forbids.

Likewise, we will be able to prove that it has been the longstanding policy of the City to carry out administrative inspections as they relate to bars and taverns, through the City's Nuisance Task Force. Typically. in excess of 20 armed law enforcement officers of the City descend upon a bar or tavern, without a warrant, to execute these "administrative inspections" looking for building code violations. fire code violations. up to date licenses, and other non-criminal violations of the law. These "raids" are conducted the busiest weekend evenings for taverns and bars, when they need not be, and often result in no violations being found. Any competent law enforcement expert would testify that such a heavily armed presence on these occasions is unnecessary, and actually increases the security risk to all concerned. This is

---

[2] While the City's Right to Know Responses clearly indicate that City officials receive no training on the issues were are herewith concerned about. if there is some "secret" training out there. it is clearly inadequate based on the specific knowledge of City officials and the operations of the Nuisance Task Force.

3

especially so when is it considered that the State Liquor Control Board conducts its inspections undercover, and then forwards citations, or the record of no citations, via the U.S. Mail.

The vagueness of the City's ordinances, and lack of regulations and training in regard to their execution, combined with the longstanding policy of turning an administrative inspection into a heavily armed S.W.A.T. like operation, and the political aspirations of some of the leaders of these operations, leads to situations where the actual intent is to drive dis-favored bar and tavern owners out of business by intimidating staff and customers. As you well know, tavern and bars owners have constitutional protected property rights which the government is bound to safeguard. Bar and taverns owners are entitled to due process before their interest in the use of their business or property is forever altered by the state. The government cannot deny them their property rights by attrition by simply appearing with heavily armed administrative search teams to drive customers away and thereby close a business.

The United States Supreme Court has "recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises.", New York V. Burger, 482 U.S. 691, 699 (1987). *See also*, G.M. Leasing Corp. v. United States, 429, U.S. 338 (1977). The fact that my clients are engaged in a commercial activity that is heavily regulated, and the fact that there are statutes or ordinances that grant the City a right to conduct an administrative inspection, does not automatically fulfill the 4th Amendment's reasonableness requirement, or always excuse the need for a warrant. To the contrary, even under the authority of a statute allowing the City to conduct an administrative inspection, government officials must act reasonably. (*See*, Burger, 482 U.S. at 702; Donovan v. Dewey, 452 U.S. 594, at 598; Delaware v. Prouse, 440 U.S. 648. 654-55 (1979). *See also*, Showers v. Spangler, 182 F.3d 165, 173 (3d Cir. 1999). Any Court will also have a heightened concern for the reasonableness required by the 4th Amendment where, as here, statutes exist authorizing administrative inspections, but the City has no policies or procedures that direct its employees on the procedures to be followed during said inspections. *See*, Collonade Catering Corp., 397 U.S. 72 (1970). *See also*, Russo v. Massullo, No. 90-3240, 1991 WL 27420 (6th Cir. Nov. 5, 1991).

Alternatively, if the City by ordinance authorizes administrative inspections, in order for the ordinance to pass constitutional muster, it must meet certain criteria, including that it contain the same safeguards provided for by a warrant. Burger, 482 U.S. at 702-03. The City's actions and ordinances "must limit the discretion of the inspecting officers... [especially in regard to] "time, place, and scope" Burger, 482 U.S. at 703 (quoting, U.S. v. Biswell, 406 U.S. 311, 315 (1972); *see also*, U.S. v. Harris Methodist Ft. Worth, 970 F.2d 94, 101-02. In this case, both § 5-1004 of the City Charter (Right of Entry), and § 9-703 of the City Code (Special Assembly) do the

opposite of what the law requires, namely they give employees of the City unfettered discretion. They are therefore on their face are unconstitutional. [3]

Given the very clear law on the proper method to execute administrative searches, the lack of clear guidance from the City in terms of ordinances, regulations, or directives, the City's clear policy of using the Nuisance Task Force as the S.W.A.T. team of administrative inspections, and the likely constitutional violations that certainly would occur as a result, my client is certain that any judge of the U.S. District Court for the Eastern District of Pennsylvania would conclude that:   " ... in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, ET., AL., 489 U.S. 378, 391 (1989).

This lack of training and oversight also led directly to City employees being able to submit unquestioned and intentionally false facts to support two illegal raids on my client's establishment, and to support an order from the Department of Licenses and Inspection to on two occasions to illegally shut the premises down.

My client will be able to prove that these circumstances have existed for nearly two decades and have been well known and blessed by City officials at all levels across the Law Department, the Department of Licenses and Inspection, the Police Department, and the District Attorney's Office. The situation so deteriorated in this case that it lead to a conspiracy by and between employees of these various departments, led by Sergeant John Massi, to deprive my client of his constitutionally protected rights in his property by driving him out of business. Unfortunately, after my client complained to the City the conspiracy was extended to retaliate against my client for complaining about these abuses.

During the pre-suit investigation of this matter it has also become clear that there are likely hundreds of other bar and tavern owners across the City who are extremely interested in joining what we would consider fashioning as a class action suit concerning these issues. From the Tavern Owners Associations

---

[3] The City Charter, § 5-1004. Right of Entry provides that:

*"Subject to the limitations of the Constitutions of the United States and of the Commonwealth of Pennsylvania, any officer or employee of the Department of Licenses and Inspections, in the performance of his duties, may at any reasonable hour, without hindrance, enter, examine and inspect all vessels, vehicles, premises, grounds, structures, buildings, and underground passages of every sort, including their contents and occupancies, and may likewise examine, inspect and test any substance, article, equipment or other property."*

The City Code, § 9-703(4) (A) states that:

*"All special assembly occupancies shall be subject to inspection by the Philadelphia Police Department or the Department of Licenses and Inspections at all reasonable times and whenever such place is open for business."*

of Philadelphia and Pennsylvania, to numerous single bar and taverns owners, the abuses of the Nuisance Task Force are well known. To date very few, if any, of these citizens have had the courage to file lawsuits against the City for fear of retaliation from the Police Department and the Department of Licenses and Inspection. A class action suit, will allow them to exercise their rights and bring much needed pubic attention to these issues.

The damages we are demanding are extremely reasonable, and unlike many civil rights cases are based on actual, provable damages suffered by my client.

I will be contacting both you and Ms. Mattioni in the next few days to set up a meeting so that you can actually meet my client, view the video tape of one of these illegal "raids", and discuss the possible pre-suit resolution of this case.

Very truly yours,


Leon A. King II, Esq.

Cc:    Mr. Frank Funaro, Fiso Lounge
        Elizabeth Mattioni, Litigation Chair
        Edward Jefferson, Deputy City Solicitor

Exhibit G

Counsel's October 7, 2010 Correspondence to City

# LEON A. KING, II

ATTORNEY AT LAW

610-724-8967

240 East Roumfort Road
Philadelphia, PA  19119

Email: Philaking@aol.com

Web Site: www.leonking.org

October 7, 2010

U.S. Mail - RRR

Ms. Frances Burns
Commissioner
City of Philadelphia
Department of Licenses and Inspection
1401 J.F.K. Blvd/11th Floor
Philadelphia, PA, 19102

Re:    Sakeya Restaurant – 1420 Locust Street – Request for Investigation

Dear Commissioner Burns,

I trust all is well.

I am writing on behalf of my clients Sakeya Restaurant and Mr. Kenny Hong who require some
intervention and assistance from your office.

Sakeya Restaurant has been located at 1420 Locust Street for about three years and as such has
been a good neighbor and has never received any citations for violations of any City or State
laws or regulations. However, we are now involved in a situation we hope can be resolved
which threatens the constitutional rights of my clients, and is caused directly by the lack of
training, oversight, and regulation of employees of the Department of Licenses and Inspections. I
do not reach such conclusions lightly.

First, as you may recall, in connection with the representation of another client (Fiso Lounge) I
made a Right to Know Request to the City for all documents that reflect the training and City
regulations that govern employees of the Department of Licenses and Inspections as they would
relate to regulating nuisances in the City, and/or specifically concerning the constitutional rights
of the citizens and/or businesses which your employees are charged to regulate and inspect. The
City's response indicated that no such documents exist. Subsequent discussions with City
officials revealed that the City believes there is some individualized "inherent" knowledge
possessed by your employees concerning the limits placed upon them by the United States
Constitution. My head still spins thinking about this line of reasoning.[1]

---

[1] I would also note that at least one City official indicated to me that the Department of Licenses and Inspections
relies on "anonymous" complaints to justify various regulatory actions including but not limited to instituting an
inspection, and/or activating the Nuisance Task Force. As noted above, there are no policies, procedures, or training
existing to guide employees on the use of such complaints, and the lack of these important guidelines clearly can

1

The recent indictment of Mr. Gassman, and the video tape footage in my possession showing Mr. Gassman (together with a very clearly indentified police officer) confiscating a cell phone from a private citizen and erasing the footage that recorded physical brutality by the Nuisance Task Force, clearly demonstrate that oversight and the related violations of constitutional rights are a very serious problem for your Department. [2]

Moreover, in November of 2009, and again in February 2010, I personally (on behalf of my client Fiso Lounge) placed the City on legal notice of the lack of training and oversight in a few areas (including the enforcement of the City's nuisance ordinances), concentrating my complaints on constitutional issues. At that time, it was requested that the City investigate the specific complaints concerning Fiso Lounge, but also to review its training as it relates to the Constitution and the employees of both the Police Department and the Department of Licenses and Inspections. To date, despite my many conversations with City officials on this subject, no such investigation and/or review has occurred. **It would seem that "deliberate indifference" can be easily established.**

In the alternative, this correspondence is not a notice of my client's intent to initiate litigation against the City. No lawsuit is currently contemplated or planned. Rather, my client is attempting to resolve a situation that may in the future require litigation. We think that mediation from your office can stop this situation deteriorating to that point.

First, Sakeya is located on the ground floor of the Academy House Condominium which is a 37 floor building with 570 units. For the past two years each time Sakeya had a special event, or even on occasions when the restaurant was closed, the complaints of one tenant (who lives on the 6th floor) brought the police to the restaurant. As you know, police routinely showing up at any business in the mode of investigating a complaint, has a negative effect on businesses. My clients have spent thousands of dollars to be responsive to these complaints and work with the City to abate any noise that may have been escaping during these special events (sounds proof walls etc). My client has attempted to speak with this tenant on more than one occasion and requested that this individual allow a City inspector inside his unit to measure the sound levels. This request was denied. My client has never been cited for any violations of the law during these

---

lead to the violation of constitutional rights in situations where businesses are raided or ordered closed as a result. The lack of oversight in similar areas by the Police Department led to the 39th District Police Scandal of the 1990s where John Baird and other corrupt police officers used "anonymous" complaints to obtain illegal search warrants and engage in related illegal activity. The resulting lawsuits cost the City hundreds of thousands of dollars.

[2] In the course of my representation of Sakeya Restaurant and Fiso Lounge, each time I bring up the name of Dominic Verdi in conversing with people across the City, 100% of the time he is referred to as a "crook" (the 100 % is a bit less if you take out the comments of the attorneys in the City Law Department's Code Enforcement Unit who it seems have completely abdicated their responsibility to advise and train employees of your Department). I have never experienced this type of reaction to a City employee in all my years of practicing law, many of which were spent representing the City of Philadelphia. At a recent meeting with City officials, I related this experience, and in response one of those City officials engaged in what I interpreted "shrill" defense of Mr. Verdi as a "good guy". It is clear, that no adverse employment action can be taken against Mr. Verdi because of my unscientific observations in representing my clients. However, given the specific allegations against Mr. Verdi in connection to Fiso Lounge it is unequivocally clear that the City has a duty to investigate those complaints and not rely on the "shrill" defenses uttered by City employees who work closely with Mr. Verdi.

visits by the Police Department. However, we have a situation where one tenant in a very large building can continually make false complaints to the Police Department and create a false record or impression with the City which can negatively affect my clients' rights to conduct business. This false record can also be used to deny those licenses renewals and the like by both the City and State. My clients request that this claim be meditated and/or solved by your Department. During your consideration of this problem you should note that despite the fact that the Academy House holds regular meetings of the Board of the building, no complaints have ever been received by the Board about noise related problems from Sakeya. As a matter of fact, as recently as this week a Board representative expressed his willingness to assist Sakeya in its efforts to be an even better neighbor and area business.

Secondly, it is commendable that under your leadership the City has recognized that in order to fulfill Mayor Nutter's desire to make the City more business friendly, that a reduction and /or consolidation of the many licenses required to operate a business be undertaken. In my clients' case, they were not aware that a Special Assembly License may have been required for some of the events taking place at Sakeya (a circumstance I am sure is repeated many times with other tavern owners). My clients' became aware of this requirement as the result of a visit by Dominic Verdi on March 19, 2010. Certainly, the Department of Licenses and Inspections has the responsibility to insure businesses have the required licenses and businesses have a duty to comply with said requirements. As such my clients applied on March 20, 2010 for a Special Assembly License. Sakeya has complied with all of the requirements of your Department for the granting of this license and the inspector informed Mr. Hong that all that is now required is approval by the Captain of the 9th Police District. We are hopeful that the false complaints by the one tenant at the Academy House do not preclude the final granting of this license.

While my clients are not presently objecting to being required to live within the law of required licenses, they do object to the manner in which this scrutiny came about. Specifically, Sakeya received a letter from the City impliedly "ordering" that my clients cancel a special event that was scheduled for March 5, 2010. As my clients understood it, the letter came about as a result of the fact that the promoter involved had been deemed "problematic" by the City of Philadelphia. My clients complied with this "order" and the promoter in question, Ali Young, required that my client pay him $500.00 as a result of the cancellation. It was very shortly thereafter that Dominic Verdi and later Mr. Gassman visited the premises and shut it down on June 25, 2010.

The issue here is that the City of Philadelphia has no legal right to impliedly, or directly, "order", or to intimidate through correspondence, any business not to engage a particular promoter for any event. As you know, not only do businesses enjoy the protections of the 14th Amendment of the United States Constitution, they likewise have a right to engage in contracts under the same document. The government cannot arbitrarily decide who one conducts business with, most certainly not based on some open ended designation of a particular person or entity as "problematic". Nor is it prudent for the City to arbitrarily increase scrutiny on businesses that are somehow "tainted" by their doing business with entities or individuals the City has deemed "problematic". When these actions of the City are combined with the lack of training and oversight generally, on constitutional issues specifically, and the clear evidence of this in the indictment of Mr. Gassman, his obstruction of justice captured on videotape, and the

3

uninvestigated allegations against Mr. Verdi, certain unconstitutional and otherwise illegal behavior is either occurring, or certainly likely to occur. This includes but is not limited to:

1. Widespread violations of the right to contract across the City;
2. Violations of the Equal Protection Clause where, for example, illegal enforcement efforts are undertaken with disparate impact on promoters, patrons, or owners of African American or other minority descent, or initiated specifically on this basis;
3. Widespread violations of the Due Process Clause where businesses are forced out of business, or restrained in their right to contract, by an increased police presence or repeated illegal raids by the City, instead of the legal processes established for this purpose;
4. Continued violation of the 4th Amendment prohibitions on unreasonable searches and seizures by the raids conducted by the Nuisance Task Force and others; or
5. Any combination of the above constitutional violations arbitrarily based on the annoyance, frustration, desire for personal or criminal gain; and/or unsupervised rages of City employees.

My clients are certainly willing, on a voluntary basis to sit down with Captain Wilson and any other City officials to discuss their concerns with promoters and others who may have the potential to be disruptive, their objection is to being ordered or intimidated to do so. They sympathize with the frustration City officials are likely to feel in circumstances were legitimate complaints are received and solutions are frustrated by lack of cooperation from the community. On the other hand, the City has been placed on notice in November of 2009 and February of 2010 on these specific issues and has done nothing. My clients hope that in light of this correspondence, the City will finally do the right thing. The request is that a process of investigation and policy review be carried out to protect the rights of my clients, other business owners across the City, and to avoid civil liability on the City's part, and/or criminal liability for certain City employees.[3]

---

[3] It should be noted that in the furtherance of my representation of Fiso Lounge, and the City's lack of response to legal notice of these issues in November of 2009, and February of 2010, I very recently personally met with representatives of the District Attorney's Office. I reported to the District Attorney's Office those complaints previously reported to the City, that if found to be true, would constitute crimes as they relate to Dominic Verdi.

I would also note that it is well recognized law enforcement practice, and certainly borne out in the 39th District Police Scandal, that routine transfers of employees with specialized responsibilities such as Mr. Verdi's is one of the things that helps combat corruption. It may well be that a permanent transfer of Mr. Verdi to a different post is in order as a matter of commonly accepted law enforcement practice. In the alternative, certainly a temporary transfer from his current duties as a result of the very serious complaint that has been made is also a prudent measure the City should undertake until the requested investigation and policy review is completed.

In case I have not been clear, in this case it appears that Mr. Verdi arbitrarily designated a particular promoter as "problematic" for reasons unknown, impliedly and/or directly "ordered", or unlawfully caused my clients not to do business with a certain individual. He then undertook without training or guidance to extract his illegal and unsupervised vision of punishment on Sakeya Restaurant as a result of this association. If all the reported allegations against Mr. Verdi are true, he cannot continue to be allowed to be the rogue, unsupervised, untrained arbitrator of contractual and property rights of business owners in this City. Especially when such conduct is forbidden by the United States Constitution.

4

Finally, as you also are aware, my clients have a constitutional right to free speech, and a right to petition the government for redress of grievances. That is specifically what my clients are doing through this correspondence. My clients, as well as many others I have consulted in the course of my representation of Sakeya Restaurant and/or Fiso Lounge, are fearful of retaliation from the City and/or its employees when bringing problems of this nature to the attention of City officials. Indeed, when my client Fiso Lounge protested unlawful and unconstitutional behavior to the City, the immediate result was a notable and sudden increased presence by the 17th Police District at or near the Fiso Lounge which was intended to intimidate my client. A follow-up communication with the City stopped this outrageous behavior.

My clients do not seek favored treatment by the City. However, in light of the fact that retaliation against my clients for exercising their constitutional rights is unlawful, and clearly has occurred as outlined above, I would request that the City of Philadelphia take all steps to make sure that no retaliation occurs. Any retaliation would of course include the actions of any City employee, private individuals acting under color of law on behalf of any City employee, or private individuals or City employees acting in concert and under color of law to retaliate against my clients.

Thank you for you time and consideration and I am available at your convenience to discuss these issues further. I am also available to specifically discuss, or hear in writing, any disagreement the City might have with any of the facts or conclusions outlined in this correspondence.

Very truly yours,

Leon A. King II

Cc:    Mr. Kenny Hong
        Charles Ramsey, Police Commissioner (RRR)
        Craig Straw, Chief Deputy City Solicitor (U.S. Mail & Electronic Mail)
        Andrew Ross, Chief Deputy City Solicitor
        Captain Dennis Wilson, 9th Police District (RRR & FAX)
        Captain Craig Washington, 17th Police District (RRR & FAX)
        Dominic Verdi, City of Philadelphia (RRR & FAX)
        Mr. Rob Wonderling, President, Greater Phila. Chamber of Commerce
        Ms. Dianne Harris, Manager, Academy House
        Mr. Paul Duca, Unit 6 D, Academy House

Exhibit H

Fax Cover Sheet to Craig Straw and October 29, 2010
Correspondence from the Pennsylvania Liquor Control
Board

TRANSMISSION VERIFICATION REPORT

```
TIME   : 11/08/2010 17:49
NAME   :
FAX    :
TEL    :
SER.#  : 000K9N194842
```

```
DATE,TIME        11/08  17:48
FAX NO./NAME     12156835397
DURATION         00:00:49
PAGE(S)          03
RESULT           OK
MODE             STANDARD
                 ECM
```

**STAPLES COPY&print**center

## Complimentary Self-Serve Fax Cover Sheet

To: Craig Straw

Fax #: 2156835397

Date: 11-8-2010

Number of Pages (including Cover): 3

From: Leon King

Phone #: 610 724 8967

Reply Fax #:

Urgent ☑   Confidential ☐   Confirm Receipt ☐

Here you go!

**We'll do it right the first time — guaranteed.**

Black & white copies • Color copies • Custom printing • Binding • Folding • Wide-format copying • Custom stamps • UPS shipping and more

**that was easy.**



# PENNSYLVANIA LIQUOR CONTROL BOARD

Harrisburg, Pennsylvania 17124-0001

October 29, 2010

IN THE PUBLIC INTEREST

LEXIE J.A., INC
1437-39 SOUTH ST
PHILADELPHIA PA 19146-1630

RE: License No. R-6639
LID No. 51592

Dear Licensee:

A preliminary review of your history of conduct placed you among a group of licensees whose files and records were reviewed under the provisions of Section 470 of the Liquor Code, to determine whether or not allegations of abuse of your licensing privilege were of such consequence as to merit refusal of the renewal application.

After careful consideration of your current and prior operating history, the Pennsylvania Liquor Control Board has decided to approve your application for renewal of Restaurant Liquor License No. R-6639 the license period effective November 1, 2010.

However, the decision to renew your license does not diminish the serious nature of the allegations of fights, assaults, assault on a police officer and disorderly operations reported by the Philadelphia Police Department during the time period November 2008 to present.

This letter serves as a warning that you, as a licensee, must take affirmative steps to prevent violations of the Liquor Code and/or to prevent employees and patrons from engaging in inappropriate activities in and around your premises through increased cooperation with the Philadelphia Police Department and the Bureau of Liquor Control Enforcement of the Pennsylvania State Police in order to retain your licensing privilege. Failure to do so could result in further action against your licensed business.

Pending issuance of a formal license, this letter constitutes your authority to dispense liquor and malt or brewed beverages in the establishment on weekdays and on Sundays during the hours provided by law, to permit dancing and provide entertainment, and to purchase liquor at a discount at a Pennsylvania Wine and Spirits Store for a period of thirty (30) days effective November 1, 2010.

AN EQUAL OPPORTUNITY EMPLOYER

PROCEEDS BENEFIT ALL PENNSYLVANIANS

October 29, 2010

. . E J.A., INC

Very truly yours,

Jane Melchior

Jane Melchior, Director
Bureau of Licensing

Refer to:  Bureau of Licensing
           (717) 772-3516
           Hours:  7:30 A.M. - 4:00 P.M.

JBM/TAM

AN EQUAL OPPORTUNITY EMPLOYER

Exhibit I

Plaintiffs' Correspondence of December 13, 2010

# LEON A. KING, II

**ATTORNEY AT LAW**

610-724-8967

Email: Philaking@aol.com

December 13, 2010

240 East Roumfort Road
Philadelphia, PA 19119

Web Site: www.leonking.org

**Via U.S. Mail, U.S. Mail,- RRR, or Fax, As Indicated**

The Hon. Tom Corbett
Attorney General
& Governor Elect
Commonwealth of PA
16th Floor Strawberry Sq.
Harrisburg, PA, 17120

Patrick J. Stapleton, Esq.
Chairman
PA Liquor Control Board
Northwest Office Building
Harrisburg, PA 17124

Colonel Frank E. Pawlowski
Commissioner
Pennsylvania State Police
1800 Elmerton Ave.
Harrisburg, Pa 17110

**Re: Sergeant William LaTorre – P.S.P. – B.L.E.C. – Civil Rights Conspiracy, Retaliation & Intimidation for the Exercise of First Amendment Rights & Unconstitutional 4th Amendment Seizures**

Dear General Corbett, Chairman Stapleton, and Colonel Pawlowski,

I represent Lexie, JA. Incorporated, d/b/a Fiso Lounge, and it's President, Frank Funaro, in an on-going legal dispute concerning the violation of my clients' constitutional rights that began or about May 3, 2009. Unfortunately, it has now become apparent that the Liquor Control Board ("the Board") has been intentionally misled by the City of Philadelphia officials involved in this dispute, and recent events make it clear that Sergeant William LaTorre of the Pennsylvania State Police ("PSP") is and/or has been continually involved in the furtherance of a conspiracy to violate my clients' civil rights, and to retaliate against them for exercising their First Amendment Rights to complain to City officials of this treatment. On behalf of my clients I am requesting that your respective offices undertake an official investigation of these events, and take appropriate remedial or disciplinary action were you deem it appropriate. My clients' wish to make sure this behavior does not continue in the future as it relates to themselves, or any other business owners in Southeastern Pennsylvania.

Additionally, my clients specifically fear retaliation from Sergeant LaTorre and/or other officials of the PSP and/or the Board for exercising their First Amendment Rights to bring these matters of pubic concern to your attention and are therefore requesting that steps be taken to make sure that such retaliation and intimidation does not occur. As I am sure you will agree, citizens have an absolute right to complain to public officials and should not have to worry about having to suffer as result at the hands of state officials. To be clear, my clients are not asking that all the rules be waived for them, they are however asking that retaliation and intimidation do not occur as a result of this complaint.

1

Before getting to the particular areas of concern against Sergeant LaTorre, it has been communicated to me over the last year that I have been involved in this matter, that there are scores of tavern owners across Southeastern Pennsylvania that have been subjected to the same type of behavior herein complained of. My impression is that the majority of them are scared to death to complain too loudly for fear of their businesses being shut down by agents of the state employing unconstitutional seizures. It would appear that some employees of the PSP, and most certainly officials of the City of Philadelphia, are not familiar with some specific United States Supreme Court precedent. The United States Supreme Court has "recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises.", New York V. Burger, 482 U.S. 691, 699 (1987), See also, G.M. Leasing Corp. v. United States, 429, U.S. 338 (1977). The fact that my clients are engaged in a commercial activity that is heavily regulated, and the fact that there may be statutes or regulations that may grant the Commonwealth a right to conduct an administrative inspection, does not automatically fulfill the 4th Amendment's reasonableness requirement, or always excuse the need for a warrant.

To the contrary, even under the authority of a statute allowing the Commonwealth to conduct an administrative inspection, government officials must act reasonably. (See, Burger, 482 U.S. at 702; Donovan v. Dewey, 452 U.S. 594, at 598; Delaware v. Prouse, 440 U.S. 648, 654-55 (1979). See also, Showers v. Spangler, 182 F.3d 165, 173 (3d Cir. 1999). Any Court will also have a heightened concern for the reasonableness required by the 4th Amendment where statutes exist authorizing administrative inspections, but the Commonwealth has no policies or procedures that direct its employees on the procedures to be followed during said inspections. See, Collonade Catering Corp., 397 U.S. 72 (1970). See also, Russo v. Massullo, No. 90-3240, 1991 WL 27420 (6th Cir. Nov. 5, 1991).

Alternatively, if the Commonwealth by statute authorizes administrative inspections, in order for the statute to pass constitutional muster, it must meet certain criteria, including that it contain the same safeguards provided for by a warrant. Burger, 482 U.S. at 702-03. The Commonwealth's actions and statutes "must limit the discretion of the inspecting officers... [Especially in regard to] "time, place, and scope" Burger, 482 U.S. at 703 (quoting, U.S. v. Biswell, 406 U.S. 311, 315 (1972); see also, U.S. v. Harris Methodist Ft. Worth, 970 F.2d 94, 101-02.

By way of information, the City of Philadelphia was specifically advised by undersigned that its ordinances concerning "administrative inspections" were resulting in citywide unconstitutional seizures and related conduct in November of 2009. At that time is was requested that the City halt any inspections under these ordinances until the situation could be reviewed. The City did nothing. In February of 2010, undersigned Counsel once again complained to the City, the City did nothing. In June of 2010 the City was once again advised by undersigned Counsel that its ordinances regarding "administrative inspections" were per se unconstitutional because of their vagueness and the unfettered discretion said ordinances gave law enforcement and other agents of the City. This was especially so because in prior Right to Know Requests to the City it became evident that neither the Police Department, nor the Department of Licenses and Inspection provided any training or supervision concerning the United States Constitution and the limits its places on administrative inspections and related subjects. Again, the City did nothing.

2

Agents of the Commonwealth, including Sergeant LaTorre, and of course agents of the City Philadelphia, in complete disregard for the United States Constitution and U.S. Supreme Court precedent on the subject, have a pattern or practice of descending on liquor establishments with an overwhelming, excessive, and unnecessary use and display of force. They combine this unlawful level of force with the practice of arbitrarily, and without legal authority, kicking all the customers out of a premises and constructively shutting it down for an evening or two without due process. They often do this with the specific intent to disrupt the business and scare customers away thereby creating the circumstances that lead to a loss of business and/or the closing of an establishment because customers fear being unlawfully arrested leave and do not return. It has also been reported that often this unnecessary and unlawful show and/or use of force is intended specifically to create confrontations with customers that result in arrests that are false and/or specifically provoked by law enforcement and then added to the list of "violations" that later might be used in a due process proceeding. One wonders how descending in large SWAT like formations on a bar or tavern where patrons are lawfully consuming alcoholic beverages, at the height of business on a weekend evening, under the guise of conducting an "administrative inspection", does anything but provoke unsuspecting law abiding citizens to protest. It would also seem to be clear that such conduct also places the safety of the law enforcement officers present in jeopardy. Lawful verbal protests by unsuspecting patrons are then met with arrests for disorderly conduct or assault on police. These circumstances are unconscionable.

While immediate safety concerns _might_ provide a basis for ordering all patrons to exit a premises, it is our belief that all too often this is done when no such exigent safety concerns are present. These tactics and specifically the display of unnecessary and unlawful force is so overwhelming that it results in what is all too often the intended consequence, the close of a business without due process as required by law. It is also our belief that often government agents combine these tactics with the illegal and arbitrary confiscation of cash, liquor, cash resisters, and perhaps other tangible assets of the business without warrant or any connected legal authority.

As noted _supra_, the entire specific background to the complaints herein alleged against Sergeant LaTorre where reported to the City of Philadelphia 3 times in the last 13 months and in response it appears the City did nothing. The City is therefore primarily responsible for misleading the Board and contributing to the actions complained of by Sergeant LaTorre. In light of this, and in light of the civil rights complaint that will be filed in the next couple of weeks in the United States District Court for the Eastern District of Pennsylvania, I will not spell all of this background out in detail. However, the complaint against Sergeant LaTorre is as follows:

1. On or about May 3, 2009, an incident occurred in the parking lot east of Fiso Lounge, wherein it was alleged by the Philadelphia Police Department that officers were injured. On the scene, and thereafter officials of the City of Philadelphia on more than one occasion threatened my clients with close of the premises in retaliation for this event;

2. Shortly thereafter an unlawful "raid" of the type described above was conducted by officials of the City of Philadelphia and we believe the Commonwealth of Pennsylvania.

3

Fiso was ordered to shut down for unfounded safety reasons and re-opened the approximately two days later;

3. Shortly thereafter a Cease Operations Order was issued by the City of Philadelphia which contained knowingly false information seeking to close Fiso Lounge down as a nuisance bar. A hearing before the City Licenses and Inspection Review Board ("Review Board") was held in June of 2009, and the Review Board found that Fiso was not a nuisance bar and it was allowed to re-open. Perjured testimony and/or evidence was presented at this hearing;

4. Not being satisfied with the result of the hearing before the Review Board officials of the City of Philadelphia and the Commonwealth, without cause, in July of 2009 again executed the type of illegal raid outlined above, scaring my clients customers away by among other things spraying chemical repellant throughout the premises, and confiscating a camera phone and erasing footage being taken by a customer of City and/or state officials illegally assaulting a customer (my clients are in possession of a independent video source capturing this obstruction of justice). Said officials found no violations and on the way out said sarcastically "you can re-open now";

5. During this illegal "raid" after law enforcement officials illegally stopped a patron legally in the premises for no apparent reason, this patron verbally protested this stop, and was taken to the ground, assaulted, and arrested for assault on police. This patron was found not guilty after a trial on the merits when it became clear that the officer in question intentionally lied about the entire event. This patron was the one being assaulted in the video intentionally erased by City and/or Commonwealth officials cited above. This patron is seeking damages from the City of Philadelphia for his false arrest and the injuries he sustained during the exercise of illegal use of force by the government actors present;

6. **Mr. Gassman, was a City official involved in this obstruction of justice. He has since been arrested by the Untied States Government for abuse of his office and has plead guilty to charges separate from the action herein complained of, but entirely illustrative and instructive. It is reasonable to assume that his guilty plea may lead to more evidence of corruption being brought forth**;

7. Between the July, 2009 illegal "raid" and November of 2009, there were no significant events at Fiso Lounge involving " fights, assaults, assault on a police officer, or disorderly operations" , or any other matter at Fiso Lounge;

8. In October of 2009 my clients applied and received a renewal of their Liquor License from the Commonwealth of Pennsylvania without incident or commentary as they had in all previous years;

9. In November of 2009, undersigned Counsel reported these illegal events to the City of Philadelphia and requested an investigation. The City did nothing;

4

10. Approximately three days later there was a notably increased police presence in the area of my clients' premises, in clear retaliation for this exercise of free speech. A complaint to the City of Philadelphia Law Department ended this practice;

11. In February of 2010, undersigned Counsel provided the City of Philadelphia more facts concerning the investigation that was requested including credible allegations of what Counsel termed "kickbacks" (i.e. payment in lieu of enforcement) connected to Deputy Commissioner of Licenses and Inspection Dominic Verdi. The City did nothing;

12. From November, of 2009 until February of 2010, there were no significant events at Fiso Lounge involving " fights, assaults, assault on a police officer, or disorderly operations" , or any other matter at Fiso Lounge;

13. On or about June 10, 2010, undersigned counsel served a demand letter on the City of Philadelphia in an effort to settle the claims complained of and since that time has been on the process of trying to negotiate a settlement of these issues;

14. On or about October 7, 2010, undersigned counsel served the City and various City officials, a strongly worded letter of complaint concerning the illegal actions of the City officials on behalf of another client, reminding them of the same issues that had occurred in regard to Fiso Lounge. Said correspondence was received by many of the same City officials involved in the illegal raids cited above;

15. On or about October 18, 2010, my clients appealed to the Board for a renew of their Liquor License;

16. While the Liquor License was eventually issued, on or about October 29, 2010, my clients received a letter form the Board indicating that they were now under special scrutiny and referred to the "serious nature of the allegations of fights assaults, assault on a police officer, and disorderly operations reported by the Philadelphia Police Department during the time period November 2008 to present";

17. Since the illegal "raid" on my clients' premises in July of 2009 to the date of the Board's letter  (some 16 months) there had been no serious allegations or incidents "of fights, assaults, assault on a police officer, and disorderly operations" or any other like matter at Fiso Lounge;

18. As noted above, the Review Board had ruled in Fiso's favor in regard to what City and Commonwealth officials then claimed were violations that dated from September of 2008 to May of 2009. This was in part due to the fact that were no police calls related to Fiso Lounge during December 2008, January 2009, February 2009, and March 2009;

19. As noted above, there had been no " allegations of fights assaults, assault on a police officer, and disorderly operations" or other violations at Fiso Lounge from at least June of 2009 up until December 2, 2010 and Sergeant LaTorre's illegal conduct;

20. In recent weeks under cover agents of the Commonwealth have been sitting for many hours in a unmarked vehicle parked outside my clients' premises observing operations;

21. On or about November 27, 2010 a Philadelphia Police sergeant on several officers conducted an illegal "inspection" of my clients' premises. No violations were found;

22. Prior to December 2, 2010 my clients were warned that the PSP was going to conduct an undercover inspection of the premises;

23. On December 2, 2010, agents of the Commonwealth, led by Sergeant LaTorre, were observed under cover in my clients' premises which was then open for a *private* party of approximately 200 student athletes from the University of Delaware;

24. The event was one with both individuals under 21. and individuals over 21 properly segregated etc.;

25. At some point in the evening Sergeant LaTorre *claimed* that he, or one of his agents, had observed two underage girls obtaining alcoholic beverages. Thereafter, in addition to the above cited illegal and improper conduct, the following unconstitutional, unlawful or unreasonable behavior occurred ;

- In furtherance of the above cited practice of intimidating customers to not return to a business and thereby shutting businesses down without due process, numerous heavily armed police dressed in SWAT like gear appeared in the premises, turned the lights up, stopped the music, and seized all the approximately 200 students allowing no one to leave;

- Despite the fact that Sergeant LaTorre and the other PSP personnel on the premises had been observing the crowd for over an hour and observed no underage drinking by the approximately 200 patrons, other than alleged in regard to the two females, and therefore were without reasonable suspicion as to the other 200 patrons, the Commonwealth through, and at the direction of, Sergeant LaTorre, illegally seized said patrons, asked all of them to produce identification, and disrupted my clients' business;

- Sergeant LaTorre conducted, or caused to be conducted, thereafter custodial interrogations of these patrons without reading their Miranda rights;

- Sergeant LaTorre ordered, or caused orders to be given, that each underage patron had to call their parents and thereafter issued citations of some sort to some of the patrons;

- Sergeant LaTorre thereafter unreasonably and unlawfully ordered, or caused an order to be given, that those present lawfully in the premises had to leave;

6

- Sergeant LaTorre thereafter arrested my client, and one bartender, without probable cause and caused them to be detained for over 12 hours;

- Sergeant LaTorre unlawfully confiscated, or caused to be confiscated Frank Funaro's legally possessed firearm without legal justification. Said weapon was not on his person at the time of his arrest and could easily have been disarmed and placed in the office safe. Despite repeated calls as directed by the PSP, the weapon has not been returned;

- Sergeant LaTorre thereafter made knowing false accusations that my client was holding a patron hostage;

- On or about December 3, 2010 the Philadelphia District Attorney's Office refused to prosecute the false charges brought by Sergeant LaTorre against my client and the above cited bartender;

- Throughout the events cited herein, undersigned counsel was in contact with Chief Deputy City Solicitor Craig Straw of the City of Philadelphia Law Department. In the course of his due diligence, Mr. Straw had occasion to speak to Sergeant LaTorre to determine the involvement of officials of the City of Philadelphia in these events. During the course of that conversation, Sergeant LaTorre was informed that Mr. Straw was handing a contemplated lawsuit by my clients against the City of Philadelphia (and by implication against many of the officials of the City that Sergeant LaTorre works very closely with) and that the charges against my client had been declined. When the Sergeant asked the name of my clients' attorney, Mr. Straw related the name of undersigned Counsel, but did not give the Sergeant a connected phone number;

- Soon thereafter, Sergeant LaTorre, called undersigned Counsel whose cell phone number is not listed, and identified himself. He indicated that he had heard that the charges had been dropped, that he was still "investigating" the circumstances of this event, and that he wanted to arrange for the surrender of my client. He indicated that he was going to have a warrant issued for said arrest, despite the falsity of the charges, and despite the fact that the Philadelphia District Attorney had declined to prosecute those charges. He indicated that there was no hurry as he would be off the work the next day (December 10, 2010) until Monday, December 13, 2010;

- During this conversation Sergeant LaTorre was informed that I did not represent Mr. Funaro criminally, but that I or his criminal attorney would get back to him concerning my clients' surrender to a warrant. It would appear Sergeant LaTorre had not yet completed an affidavit of probable cause to support, nor had any warrant been approved. Despite this, Sergeant LaTorre thereafter called my clients' home and left a message;

- Sergeant LaTorre has a known working relationship with recently indicted Mr. Gassman, and other officials of the City of Philadelphia that my client has complained about, and we believe his actions are in furtherance of their stated intention to close my clients' business down, and in direct retaliation for the complaints my clients made concerning the illegal conduct on the part of City officials, using the illegal practices referred to in this letter.

I trust this correspondence provides you will all of the information you need to conduct the proper inquiry into these matters. My clients stand ready to abide by the laws of the Commonwealth, while at the same time are hoping you can help make sure that enforcement of the Commonwealth's statutes and the City of Philadelphia's ordinances is not done in an unconstitutional manner. We also hope that you can help make sure that enforcement actions in the Commonwealth are not undertaken based on the subject business' vocal exercise of its First Amendment right to complain of abuses.

Thank you for your anticipated cooperation and assistance, and please contact me if you or your subordinates have any further questions, comments, or concerns.

Very truly yours,

Leon A. King II, Esq.

Cc:   Mr. Frank Funaro, Fiso Lounge
Charles Ramsey, Police Commissioner, City of Philadelphia (RRR)
Frances Burns, L & I Commissioner, City of Philadelphia (RRR)
Jane Mechior, Director of Licensing, PLCB
Dominic Verdi, Deputy Commissioner L & I, City of Philadelphia (RRR & FAX)
Craig Straw, Chief Deputy City Solicitor, City of Philadelphia (FAX and U.S. Mail)
Andrew S. Ross, Chief Deputy City Solicitor, City of Philadelphia
Edward Jefferson, Deputy City Solicitor, City of Philadelphia
Maj. John P. Lutz, Director, Pennsylvania State Police – B L.C.E. (FAX & RRR)
Capt. Thomas Butler, Pennsylvania State Police, Dir. of Op., BLCE **(FAX & RRR)**
Captain Tony Washington, 17th Police District, City of Philadelphia (FAX and RRR)
Sergeant John Massi, 9th Police District, City of Philadelphia (FAX and RRR)
Sergeant William LaTorre, Pennsylvania State Police, BLCE (FAX & RRR)
Mr. Rob Wonderling, President, Greater Phila. Chamber of Commerce
Mr. Tom Berry, President, Tavern Owners Assoc. of PA
Ms. Eleanor Driscoll, Board Member, Tavern Owner's Assoc. of PA
Mr. Ray Swedlow, Board Member, Tavern Owner's Assoc. of PA
Civil Rights Enforcement, Pennsylvania Attorney General
Pennsylvania State Police, Bureau of Integrity and Professional Standards

8